Theresia GROOMES, Individually and as Next Friend of H.K., a Minor Child, Appellant

v.

USH OF TIMBERLAWN, INC. f/k/a Timberlawn Mental Health System, Appellee.

No. 05–04–01264–CV.

Court of Appeals of Texas, Dallas.

July 29, 2005.

Rehearing Overruled Sept. 12, 2005.

John E. Wall, Jr., Law Offices of John E. Wall, Jr., Dallas, for appellant.

Sidney L. Murphy, Steed Flagg, L.L.P., Rockwall, for appellee.

Before Justices WHITTINGTON, MOSELEY and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This is an appeal from an order holding that plaintiff's claims are "health care liability claims" and dismissing her claims because she did not file an expert report as required by Texas Medical Liability and Insurance Improvement Act, article 4590i (the MLIIA).[1]

Theresia Groomes, individually and as next friend of H.K., her minor son, sued USH of Timberlawn, Inc. f/k/a Timberlawn Mental Health System for false imprisonment, intentional infliction of emotional distress, and abuse of process when Timberlawn did not discharge H.K. from its

facility upon her request. Timberlawn filed a motion to dismiss Groomes' claims pursuant to the MLIIA, arguing that Groomes' claims are recast health care liability claims and should be dismissed because she failed to provide an expert report as required by that statute. Timberlawn also filed a motion for summary judgment. The trial court granted the motion to dismiss and did not reach the merits of the summary judgment motion. Groomes appeals the trial court's determination, arguing that her claims are not health care liability claims. We affirm.

## I. BACKGROUND

On August 10, 2001, H.K., age 14, was driving his mother's car without a license and was stopped by police. While talking to police, H.K. said, "Maybe I just don't need to live anymore." The record shows police referred H.K. for observation, but is silent about the details of that referral. That same night, H.K. attempted suicide by overdosing on pills he found at his house and was treated at a local hospital emergency room. Groomes then took H.K. to Timberlawn for observation where a doctor evaluated H.K.'s condition, diagnosed symptoms of a mental illness and recommended hospitalization. H.K. was admitted to Timberlawn as a voluntary patient. Another doctor took H.K.'s history and performed a physical examination. H.K. told that doctor that he felt like overdosing "a lot" and had increased feelings of depression over the previous two weeks.

1. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–41.05, 1977 Tex. Gen. Laws 2039–64 (subsequent amendments omitted) (former TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.2003)), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–

74.507 (Vernon Supp.2005)) (hereafter MLIIA). Groomes filed this lawsuit before the repeal of article 4590i therefore this case is governed by the provisions of article 4590i in effect at that time. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 864, 899.

Groomes instructed Timberlawn not to give H.K. any medications without her consent. When she learned later that day that a doctor had administered medications without asking her, she signed a letter of release asking Timberlawn to discharge H.K. A third doctor advised Groomes that H.K. should remain at Timberlawn for forty-eight hours for observation and to prevent another suicide attempt, but Groomes insisted on H.K.'s discharge. That doctor signed an order of discharge against medical advice on August 11, but after consulting with another psychiatrist and reviewing H.K.'s file, decided to discontinue the discharge order and to apply for an order of protective custody.[2] H.K. ultimately was discharged on August 13.

Groomes claims Timberlawn falsely imprisoned her son from August 11 until August 13, causing them emotional distress.

## II. REVIEW OF SUMMARY JUDGMENT

In her first, second, and fourth issues, Groomes argues the trial court erred in granting Timberlawn's motion to dismiss because "there are genuine issues of material fact" regarding her claims of false imprisonment and infliction of emotional distress and because "the trial court erred in considering the '[s]ummary [j]udgment [e]vidence' in the light most favorable to the moving party as opposed to the nonmoving party." To the extent these issues require us to consider Timberlawn's motion for summary judgment, we decline to do so because the trial court expressly stated it was not ruling on that motion. See Cummings v. Cire, 74 S.W.3d 920, 923 (Tex.App.-Amarillo 2002) ("court must act upon a motion before its substance can be considered on appeal"), reversed on other grounds, 134 S.W.3d 835 (Tex.2004); see also TEX.R.APP. P. 33.1. We address the trial court's dismissal of Groomes' claims under her third issue.

We overrule Groomes' first, second, and fourth issues.

## III. THE MLIIA

### A. Standard of Review

■ In her third issue, Groomes argues the trial court erred by dismissing her claims. She argues the standard of review is abuse of discretion. See Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex.2001) (holding a dismissal for failure to file an adequate expert report under section 13.01 of the MLIIA is a sanction and reviewed for abuse of discretion). However, courts have held that when the issue is whether the cause of action is a "health care liability claim" for purposes of the MLIIA, we apply the de novo standard of review. See, e.g., Jones v. Khorsandi, 148 S.W.3d 201, 205 (Tex. App.-Eastland 2004, pet. filed); Buck v. Blum, 130 S.W.3d 285, 290 (Tex.App.-Houston [14th Dist.] 2004, no pet.); Ponce v. El Paso Healthcare System, Ltd., 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied). We conclude that where the issue is one of statutory interpretation, such as here, the de novo standard of review applies and that the trial court properly dismissed Groomes' cause of action.

### B. Health Care Liability Claims

■ The Legislature passed the MLIIA to "reduce excessive frequency and severity of health care liability claims" and to "make affordable medical and health care more accessible and available to the citizens of Texas." See MLIIA at

2. The record does not reveal whether Kram actually applied for an order or what, if any, determination was made by the court on the application.

§ 1.02(b)(1), (5); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex.2004). For those reasons, the MLIIA imposes restrictions on health care liability claims. *Rose*, 156 S.W.3d at 543. One such restriction is the requirement that a claimant provide each defendant with an expert report within 180 days of filing the claim or risk dismissal of his claim. *See* MLIIA at § 13.01(d), (e)(3); *Murphy v. Russell*, 167 S.W.3d 835, 836–37 (Tex.2005). For the MLIIA and its restrictions to apply, the claim must be a "health care liability claim." *Rose*, 156 S.W.3d at 543. The MLIIA defined "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*See* MLIIA at § 1.03(a)(4).

If Groomes' claims are really claims "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety," they are governed by the MLIIA. *See* MLIIA at § 1.03(a)(4). The MLIIA defined "medical care" as

> any act defined as practicing medicine in Article 4510, Revised Civil Statutes of Texas, 1925, as amended, performed or furnished, or which should have been performed, by one licensed to practice medicine in Texas for, to, or on behalf of a patient during the patient's care, treatment, or confinement.

*See* MLIIA at § 1.03(a)(6). The MLIIA defined "health care" as

> any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.

*Id.* § 1.03(a)(2).

■■■ We examine the underlying nature of the claim, and not simply the plaintiff's pleadings, in determining if a cause of action is a "health care liability claim." *See Murphy*, 167 S.W.3d at 837; *Rose*, 156 S.W.3d at 543; *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994). One factor we consider is whether "the acts or omissions alleged in the complaint are an inseparable part of the rendition of health care services." *Rose*, 156 S.W.3d at 544; *see Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex. 1995). We also may consider whether medical expert testimony will be required to prove the claim. *See Rose*, 156 S.W.3d at 544 (citations omitted).

## C. GROOMES' CLAIMS

■■■ Groomes claims that H.K. was falsely imprisoned and that she and H.K. suffered emotional distress because Timberlawn conducted a psychological evaluation of H.K. "for alleged suicidal ideation," "administered medication to [H.K.] without [his] mother's consent" and "involuntarily committed [H.K.] to its facility for psycholog[ical] and psychiatric evaluation knowing full well there was no need and knowing [full] well that [H.K.'s] parents had sought to remove the child from their care."

In her response to Timberlawn's motions to dismiss and for summary judgment, Groomes claimed she "did not file a 4590i action," and that the motion to dismiss should be denied because "it references a cause of action not raised by Plaintiff's pleadings." On appeal, she argues her claims are not health care liability claims because the administration of medication to H.K. without her consent is not a

question of the standard of care, but a question of a breach of the law. She also argues her false imprisonment claim is "nothing but a [claim for] straightforward detention" because H.K.'s detention without authority, not his care, is her complaint. We disagree.

For her to prevail on her claim for false imprisonment, Groomes must prove that Timberlawn acted without authority of law. *See generally Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640 (Tex.1995) (discussing elements of false imprisonment cause of action). Texas law authorizes physicians who have reasonable cause to believe a patient meets the criteria for court-ordered mental health services to seek court intervention for that patient's safety. *See* Tex. Health & Safety Code Ann. § 572.004(d) (Vernon 2003). The doctor's decision to discontinue H.K.'s discharge and to seek court-ordered detention, and whether that decision was appropriate, implicates H.K.'s diagnosis, care, and treatment while at Timberlawn. *See Smalling v. Gardner,* No. 14–03–01079–CV, 2005 WL 549855, at *6, —— S.W.3d ——, —— (Tex.App.-Houston [14th Dist.] Mar. 10, 2005, no. pet. h.). This, in turn, implicates the standard of care, because an evaluation of Timberlawn's decision regarding H.K.'s discharge from the hospital requires consideration of the duties owed to H.K. and what an "ordinarily prudent physician or health care provider would do under the circumstances." *Id.; see Rose,* 156 S.W.3d at 546. To establish that Timberlawn did not have "authority of law" to detain H.K., Groomes will necessarily have to offer evidence that the doctor departed from an accepted standard of medical care by not authorizing H.K.'s discharge and by seeking an order for H.K.'s detention. Additionally, there may have been reasons why giving H.K. medication did not breach the standard of care, even without Groomes' consent, and expert testimony will be required regarding those reasons. *See Murphy,* 167 S.W.3d at 839. And Groomes' claim for intentional infliction of emotional distress derives from her claim for false imprisonment.

The underlying nature of all of Groomes' claims against Timberlawn derive from the doctors' decisions to administer medication and to discontinue H.K.'s discharge. *See Murphy,* 167 S.W.3d at 839; *Rose,* 156 S.W.3d at 546. As a result, the hospital's alleged acts or omissions are inextricably intertwined with the patient's medical treatment and the hospital's provision of medical care. *Rose,* 156 S.W.3d at 546. *See Savage v. Psychiatric Inst. of Bedford, Inc.,* 965 S.W.2d 745, 753 (Tex.App.-Fort Worth 1998, pet. denied) (plaintiff's claims for false imprisonment and emotional distress arise from care received at hospital and are health care liability claims).

Groomes cannot avoid the requirements of the MLIIA by recasting her claims as non-medical negligence claims. *See Murphy,* 167 S.W.3d at 839; *Rose,* 156 S.W.3d at 543. Consequently, the trial court properly determined that Groomes' claims were health care liability claims controlled by the MLIIA because they arose "from health care provided to H.K. [and] that his admission, discharge, and discontinuance of discharge order were decisions made by physicians exercising their medical judgment."

■ Additionally, the trial court dismissed Groomes' claims because she failed to comply with section 13.01 of the MLIIA requiring her to take certain actions, including furnishing Timberlawn an expert report within a specified period of time. *See* MLIIA at § 13.01(a), (d)(1)(2). It is undisputed that subsection (e) requires the court to dismiss the action with prejudice if a claimant fails to comply with that section and that Groomes did not furnish

the required expert report. Accordingly, we conclude the trial court properly dismissed Groomes' claims.

We overrule Groomes' third issue.

## IV. Conclusion

We conclude the trial court correctly held that Groomes' claims were health care liability claims and properly dismissed her cause of action with prejudice for failure to comply with the provisions of the MLIIA. For these reasons, we affirm the trial court's judgment.