Opinion issued July 26, 2007






 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01151-CV






CHRISTUS HEALTH D/B/A/ CHRISTUS NEW HORIZONS CENTER,
Appellant


V.


BENNIE BEAL, III, Appellee






On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause No. 06CV0515







O P I N I O N

 Appellant, Christus Health d/b/a Christus New Horizons Center ("Christus"),
appeals from the trial court's order denying its motion to dismiss for failure to file an
expert report. In two issues, Christus argues that the trial court abused its discretion
in denying the motion to dismiss because (1) Christus is a health care provider and
(2) the appellee has asserted a health care liability claim. 

 We affirm.

Facts and Procedural History

 On January 18, 2006, while a resident at Christus, a drug and alcohol treatment
center, Bennie Beal, III, was injured when the bed in which he was sleeping
collapsed. The bed consisted of a wooden frame; a flat, metal-spring platform that
rested on wooden slats mounted on the inside of the bed frame; and a mattress, which
rested on the metal-spring platform. 

 According to his deposition, Beal was asleep when the metal-spring platform
and the mattress fell through the wooden bed frame to the floor. The fall awakened
him, but he could not move because of "excruciating pain" in his neck, back, arms,
and legs. Because he could not get up, Beal began to call for help. Twenty or 30
minutes later, another resident heard Beal calling for help and notified Louise
Shepherd, a Christus staff member, about Beal's fall. When she came into his room,
Beal told Shepherd that he could not get up on his own. Eventually Shepherd was
able to help Beal over the wooden bed frame and into the other bed in his room. 
Later that morning, Beal took a taxi to the emergency room, where he was told that
he had a severe injury to his spinal cord, which later required surgery.

 On May 11, 2006, Beal filed suit against Christus, alleging the following facts:

 On or about January 18, 2006, Bennie Beal III . . . was a resident at the
Defendant's treatment facility, Christus New Horizons Center. Beal was
asleep in his bed. The bed collapsed. Beal fell to the floor. Beal
sustained injuries and or suffered an aggravation of a pre-existing
condition as a proximate result of the fall. The collapse of the bed and
the resulting fall of Beal was [sic] proximately caused by the negligence
of the Defendant.


On September 29, 2006, Christus filed a motion to dismiss, arguing that, because
Christus is a health care entity and Beal's claim was a health care liability claim, his
claim should be dismissed because he had failed to file an expert report pursuant to
Texas Civil Practice and Remedies Code section 74.351. (1) Without making findings
of fact or conclusions of law, the trial court denied Christus's motion to dismiss.

Standard of Review

 Section 74.351 of the Texas Civil Practice and Remedies Code requires that a
claimant who makes a health care liability claim serve an expert report on each party
or the party's counsel not later than the 120th day after the date his original petition
was filed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2006). 
If the plaintiff does not timely serve an expert report, the trial court must, on the
motion of the affected physician or health care provider, enter an order dismissing the
claim with prejudice. Id. § 74.351(b) (Vernon Supp. 2006). Here, Beal did not serve
an expert report on Christus; and, as a result, Christus filed a motion to dismiss for
failure to file an expert report pursuant to section 74.351, which the trial court denied. 
Generally, we review a trial court's order on a motion to dismiss under an abuse of
discretion standard. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 877 (Tex. 2001). However, "to the extent resolution of this issue requires
interpretation of the statute itself, we review under a de novo standard." Buck v.
Blum, 130 S.W.3d 285, 290 (Tex. App.--Houston [14th Dist.] 2004, no pet.); Ponce
v. El Paso Healthcare Sys., Ltd., 55 S.W.3d 34, 36 (Tex. App.--El Paso 2001, pet.
denied); Gomez v. Matey, 55 S.W.3d 732, 735 & n.2 (Tex. App.--Corpus Christi
2001, no pet.). 

Analysis

 Christus argues that the trial court abused its discretion in denying the motion
to dismiss because (1) Christus is a health care provider and (2) Beal has asserted a
health care liability claim. 

 Health Care Provider In its first issue, Christus argues that it qualifies as a health care provider (2)
because (1) it is licensed by the State of Texas; (2) it provides health care; and (3) it
is a residential drug and alcohol treatment program, such as is found in detoxification
facilities. Beal contends that Christus is not a health care provider because it does not
"qualify for any of the categories listed" in the definition of a health care provider. 
Therefore, according to Beal, because a licensed treatment facility like Christus is not
listed, Christus is not a health care provider under chapter 74.

 Under the Texas Civil Practice and Remedies Code,


 "Health care provider" means any person, partnership,
professional association, corporation, facility, or institution duly
licensed, certified, registered, or chartered by the State of Texas
to provide health care, including:


 


 
 a registered nurse;
 


 


 
 a dentist;
 


 


 
 a podiatrist; 
 


 


 
 a pharmacist;
 


 


 
 a chiropractor; 
 


 


 
 an optometrist; or
 


 


 
 a health care institution. (3) 


 


 The term includes:


 


 
 an officer, director, shareholder, member, partner, manager,
owner, or affiliate of a health care provider or physician;
and
 


 


 


 
 an employee, independent contractor, or agent of a health
care provider or physician acting in the course and scope
of the employment or contractual relationship.
 


 

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(12) (Vernon 2005) (emphasis added). 

 We agree with Beal that Christus does not fall within any of the categories
listed in the definition of "health care provider." See id. § 74.001(12)(A). We
disagree with his contention, however, that the list included within the definition of
"health care provider" is an exclusive list. 

 Beal contends that the list is exclusive because the legislature "specifically
listed and defined which health care facilities are covered by Chapter 74 . . . with the
full knowledge that the courts of Texas had construed [former] [a]rticle 4590i as an
exclusive listing of health care facilities." Former article 4590i stated, 

 "Health care provider" means any person, partnership, professional
association, corporation, facility, or institution duly licensed or chartered
by the State of Texas to provide health care as a registered nurse,
hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer,
employee, or agent thereof acting in the course and scope of his
employment.


Act of May 30, 1977, 65th Leg., R.S., ch 817, § 1.03(a)(3), 1977 Tex. Gen. Laws
2039, 2041, repealed and codified as amended by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 865, 884 (hereinafter,
"former art. 4590i § 1.03(a)(3)") (emphasis added). 

 The revised definition of "health care provider," however, removes the term
"as" and replaces it with "including." Compare former art. 4590i § 1.03(a)(3) with
Tex. Civ. Prac. & Rem. Code Ann. § 74.001(12). Use of the word "including"
makes the list nonexclusive. See Tex. Gov't Code Ann. § 311.005(13) (Vernon
2005) ("'Includes' and 'including' are terms of enlargement and not of limitation or
exclusive enumeration, and use of the terms does not create a presumption that
components not expressed are excluded."). Thus, previous judicial interpretations of
former article 4590i § 1.03(a)(3) that determined the list was exclusive are obsolete
and have no application to the amended definition. See Brown v. Villegas, 202
S.W.3d 803, 805-06 (Tex. App.--San Antonio 2006, no pet.) (holding previous
analysis of former article 4590i § 1.03(a)(3) obsolete due to legislative change of "as"
to "including").

 Because the list in the current definition of "health care provider" is not
exclusive and the definition does not exclude a drug and alcohol treatment facility
like Christus, the legislature has not expressed an intent that such a facility cannot fall
within the protections of chapter 74. See Pro Path Servs., L.L.P. v. Koch, 192 S.W.3d
667, 671 (Tex. App.--Dallas 2006, pet. denied) (holding that because definition of
"health care provider" does not exclude pathology laboratories, legislature has not
expressed intent that pathology laboratories cannot fall within protections of chapter
74). To determine whether Christus qualifies as a health care provider, then, we must
determine whether it is a "person, partnership, professional association, corporation,
facility, or institution duly licensed, certified, registered, or chartered by the State of
Texas to provide health care." See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(12). 
"Health care" is defined as "any act or treatment performed or furnished, or that
should have been performed and furnished, by any health care provider for, to, or on
behalf of a patient during the patient's medical care, treatment, or confinement. Id.
§ 74.001(10) (Vernon 2005). 

 At the time Beal was injured, Christus held a license from the State of Texas
pursuant to chapter 464 of the Health and Safety Code, which governs "facilities
treating alcoholics and drug-dependent persons." See Tex. Health & Safety Code
Ann. §§ 464.001-.0195, 464.031-.061 (Vernon 2001), § 464.020 (Vernon Supp.
2006). The license states that Christus has 14 residential beds and that the setting is
"Intensive Residential" and "Supportive Residential." The license was signed by Dr.
Eduardo J. Sanchez, the Commissioner of the Texas Department of State Health
Services. During his time at Christus, Beal was required to be on time for "group,"
participate in various duties about the facility, see a counselor at an assigned time,
stay with the treatment plan, and complete assignments. Based on this evidence, we
conclude that Christus is a health care provider as defined by the Civil Practice and
Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(12). 

 We sustain Christus's first issue.

 Health Care Liability Claims

 In its second issue, Christus argues that Beal's claims about an unsafe bed
constitute health care liability claims because (1) the furnishing of a safe bed in a
drug and alcohol treatment center directly relates to the health care provided to Beal
in that a safe bed was an inseparable part of his treatment; (2) the claims are
inextricably intertwined with his claims about improper treatment by the staff
following the bed's collapse; and (3) the claims encompass a claimed departure from
accepted standards of safety.

Claimed Departure from Accepted Standards of Safety

 In support of its argument that Beal's claims encompass a claimed departure
from accepted standards of safety, Christus relies on the Texas Supreme Court's
recent decision in Diversicare General Partner, Inc. v. Rubio, which dealt with the
characterization of safety violation allegations under the Medical Liability and
Insurance Improvement Act ("MLIIA"), chapter 74's predecessor. See 185 S.W.3d
842, 855 (Tex. 2005). In Diversicare, Maria Rubio, through her daughter as next of
friend, sued her nursing home for injuries that occurred from two alleged falls and for
alleged sexual assaults against her by another nursing home patient. Id. at 845. The
sexual assaults allegedly took place nearly five and one-half years before her suit was
filed. Id. Diversicare moved for summary judgment on all of Rubio's claims arising
from the alleged sexual assaults, arguing that the MLIIA's two-year statute of
limitations barred recovery on her claims. Id. Rubio argued that because her claims
were not health care liability claims under the MLIIA, they were governed by the
general statute of limitations for personal injury claims, which tolls the statute of
limitations for mental incapacity. See Tex. Civ. Prac. & Rem. Code Ann.
§ 16.001(b) (Vernon 2002), § 16.003 (Vernon Supp. 2006).

 A majority of the Texas Supreme Court held that Rubio's claims were MLIIA
claims under the safety element of the statute because the supervision of Rubio and
the patient who assaulted her were "inseparable from the accepted standards of safety
applicable to the nursing home . . . ." Diversicare, 185 S.W.3d at 855. The relevant
statute in effect read:

 "Health care liability claim" means a cause of action against a health
care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care or health
care or safety which proximately results in injury to or death of the
patient, whether the patient's claim or cause of action sounds in tort or
contract.


Act of May 30, 1977, 65th Leg., R.S., ch 817, § 1.03(a)(4), 1977 Tex. Gen. Laws
2039, 2041, repealed and codified as amended by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 864, 884 (hereinafter,
"former art. 4590i § 1.03(a)(4)"). (4) The majority reasoned that a nursing home's
provision of professional supervision, monitoring, and protection of the patient
population necessarily implicated standards of safety under the MLIIA, and it noted
that "the Legislature's inclusion within the scope of the MLIIA of claims based on
breaches of accepted standards of 'safety' expands the scope of the statute beyond
what it would be if it only covered medical and health care." Diversicare, 185
S.W.3d at 855. 

 Appellant also directs our attention to this court's original opinion in Marks v.
St. Luke's Episcopal Hospital. See 177 S.W.3d 255 (Tex. App.--Houston [1st Dist.]
2006), vacated, 193 S.W.3d 575 (Tex. 2006). In that case, Marks was injured when,
while seated at or near the foot of his hospital bed, he attempted to use the footboard
to push himself up to a standing position and the footboard fell off, causing him to
fall to the floor. See Marks v. St. Luke's Episcopal Hosp., No. 01-04-00228-CV,
2007 WL 1300126, at *1 (Tex. App.--Houston [1st Dist.] May 3, 2007, no pet. h.)
(mot. for en banc reconsideration filed). This court originally held that Marks's
claims about the bed related to premises liability, not medical liability. Id. 
Subsequent to that opinion, the Texas Supreme Court issued Diversicare, and, on
petition by St. Luke's, vacated this court's opinion and remanded the cause for further
consideration in light of Diversicare. (5) See id. On remand, the majority held that
Marks's claims were health care liability claims under the MLIIA because "the failure
to provide a safe environment and the negligent assembly of the bed are complaints
of a breach of the accepted standards of safety." Id. at *5.

 The instant case is governed by Chapter 74 of the Civil Practice and Remedies
Code, which contains different language than the superseded statute at issue in
Diversicare and Marks. Under the current statute, as amended and codified, a health
care liability claim is defined as:

 [A] cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which
proximately results in injury to or death of a claimant, whether the
claimant's claim or cause of action sounds in tort or contract.


Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (Vernon 2005) (emphasis
added). 

 The instant case is legally distinguishable from Diversicare and Marks. The
MLIIA definition of a health care liability claim included claims not only for
treatment or lack of treatment, but also claims for "other claimed departure[s] from
accepted standards of medical care or health care or safety." See former art. 4590i
§ 1.03(a)(4) (emphasis added); see also Diversicare, 185 S.W.3d at 855 ("[T]he
Legislature's inclusion within the scope of the MLIIA of claims based on breaches
of accepted standards of 'safety' expands the scope of the statute beyond what it
would be if it only covered medical and health care."). Under the current statute, the
definition of a health care liability claim still includes claims for treatment or lack of
treatment; however, the part referring to "other claimed departure[s]" has been
amended to read "other claimed departure[s] from accepted standards of medical care,
or health care, or safety or professional or administrative services directly related to
health care." See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (emphasis
added).

 Since the enactment of Chapter 74, only one court has analyzed the difference
between former article 4590i section 1.03(a)(4) and current section 74.001(a)(13). 
See Valley Baptist Med. Ctr. v. Stradley, 210 S.W.3d 770, 774-75 (Tex.
App.--Corpus Christi 2006, pet. filed). In Stradley, the Corpus Christi Court of
Appeals held that, based on a grammatically correct reading of the statute, (6) a safety
claim under Chapter 74 can be categorized as a health care liability claim "only when
it is against a health care provider or physician for a claimed departure from accepted
standards of safety directly related to health care." Id. at 775 (emphasis added). In
determining that the additional language "directly related to health care" modifies the
word "safety," the court stated:

 Claims involving "safety or professional or administrative services"
constitute the final type of possible health care liability claims
contemplated by the statute. These peripheral claims are not separated
by commas, they are only separated by the disjunctive term "or," and
therefore fall into the same class of claims. The phrase appearing right
after the peripheral claims is "directly related to health care." Both the
peripheral claims and the latter phrase are confined with each other by
commas. Because we are mindful of the rules of grammar when reading
a statute, we find the peripheral claims are tempered by the phrase
"directly related to health care" because it appears immediately after that
class of claims.


Id. (citations omitted). 

 We agree with the Stradley court's reading of the statute and adopt its
interpretation. We hold, therefore, that a safety claim under Chapter 74 can be
categorized as a health care liability claim only when it is against a health care
provider or physician for a claimed departure from accepted standards of safety
directly related to health care. As the Stradley court concluded, to hold otherwise
and to find that all safety claims against health care providers and physicians are
health care liability claims, regardless of whether they directly relate to health care,
"would be an arbitrary and legislatively unauthorized expansion of the health care
liability statute." See Stradley, 210 S.W.3d at 775; see also Diversicare, 185 S.W.3d
at 867 (O'Neill, J., dissenting) ("When it recently amended the definition of 'health
care liability claim,' the Legislature clarified that claims falling under the statute must
relate to the actual provision of health care."); but see Diversicare, 185 S.W.3d at
861 n.4 (Jefferson, C.J., concurring in part, dissenting in part, and concurring in
judgment) ("It is clear under the revised statute that claims for 'professional or
administrative services' must be 'directly related to health care'; however, there is no
indication that claims involving 'safety' must also relate to health care."). Thus, we
must determine whether the underlying nature of Beal's claims are safety claims that
directly relate to health care.

 Christus argues that a safe bed directly relates to the health care Christus
provided to Beal because sleeping on the premises was an integral part of the
treatment program offered to Beal and was an absolute necessity to his recovery. In
support of its position, Christus cites Espinosa v. Baptist Health System. See No. 04-05-00131-CV, 2006 WL 2871262 (Tex. App.--San Antonio Oct. 11, 2006, pet.
denied) (mem. op.). In that case, Espinosa sued Baptist Health System for injuries he
allegedly sustained when the trapeze lift device over his hospital bed suddenly
became detached as he was holding onto it, causing him to fall back on the bed. Id.
at *1. In examining the underlying nature of his claim, the San Antonio Court of
Appeals stated that Espinosa had "alleged a failure to properly assemble and install,
as well as a failure to inspect, supervise and maintain, a device ordered by his
physician for his continued medical care, and assembled and utilized by hospital staff
in accordance with the physician's orders." Id. at *2. These allegations, the court
held, "notwithstanding the use of premises liability language, amount[ed] to a claimed
departure from the accepted standards of medical or health care." Id. The court also
held that use of the trapeze lift device was an "inseparable part of the rendition of
medical services to Espinosa." Id. at *4. Espinosa's physician had ordered use of the
trapeze lift device as part of Espinosa's medical care; was of the professional medical
opinion that it was necessary to Espinosa's medical treatment; and had a plan in place
for Espinosa to use the device whenever he moved in and out of his hospital bed. Id. 
Moreover, the device had been assembled and attached by a nurse and an orthopedic
technician, both of whom were relying on the doctor's orders in the use of the device
for Espinosa's medical care. Id.

 Christus's reliance on Espinosa is misplaced. In Espinosa, the trapeze lift
device was a specialized medical device that, based on his doctor's professional
opinion, was necessary for Espinosa's continued medical care and required assembly
by a nurse and an orthopedic technician according to the doctor's orders. 
Additionally, the doctor had put in place a plan for Espinosa to use the device
whenever he moved in and out of his hospital bed. Here, no evidence shows that
Beal's collapsed bed is a specialized medical device. Further, no evidence shows that
its use had been ordered by a doctor or any of the professional staff at Christus for a
specific medical purpose, that its assembly or maintenance required any specialized
medical or technical knowledge, or that it contributed to Beal's treatment in any way
other than to provide him a place to sleep at night.

 Appellant also cites Shults v. Baptist St. Anthony's Hospital Corp. and claims
that it is important because the Amarillo Court of Appeals "went to great lengths to
examine whether there was any evidence that the subsequent treatment of the
laceration on [Shults's] foot caused his resulting infection." See 166 S.W.3d 502,
505-06 (Tex. App.--Amarillo 2005, pet. denied). In that case, Shults was admitted
to Baptist St. Anthony's Hospital for a surgical procedure on his right leg. Id. at 503. 
In preparation for surgery, he was instructed to take a shower. Id. After his shower
and while returning to his bed, Shults noticed a trail of blood leading from the
bathroom to his bed. Id. A nurse bandaged his injury, but the cut to his foot became
infected and ultimately required surgical intervention. Id. Shults filed suit against
St. Anthony's, alleging that he had been injured when he stepped on a sharp paint
chip on the bathroom floor. Id. 

 In its successful motion for summary judgment, St. Anthony's argued that
Shults's claims were not health care liability claims, but ordinary negligence claims
or premises liability claims, and thus barred by the statute of limitations. Id. at 504. 
The Amarillo Court of Appeals agreed and held that the presence of a sharp paint chip
could not be considered "in any way an inseparable part of the medical services
rendered to Shults." Id. at 505. In coming to this conclusion, the court did not
examine whether there was any evidence that subsequent treatment of Shults's injury
caused the resulting infection, as Christus argues. Rather, it conducted such an
analysis in response to St. Anthony's alternative argument that Shults had not
produced any evidence of the essential elements of a health care liability claim. Id.
at 505-06.

 Christus also attempts to distinguish Stradley. See 210 S.W.3d 770. In that
case, Stradley brought premises liability and negligence causes of action against
Valley Baptist Medical Center, alleging that she was thrown to the floor and injured
when a treadmill that she was using unexpectedly accelerated and the emergency
stop-cord failed. Id. at 772. Stradley was a 78-year-old retiree with weight,
hypertension, and mobility issues, and her primary care physician had "prescribed"
exercise and referred her to a fitness center located on Valley Baptist's campus. Id. 
The Corpus Christi Court of Appeals held that Stradley's personal injury and
negligence claims were not health care liability claims, but rather "personal injury
claims of the most pedestrian nature." Id. at 775-76. In making its decision, the
court rejected as "absurd" Valley Baptist's argument that Stradley's claims were
health care liability claims because Stradley's physician had recommended exercise
for her ailments. Id. at 776. The court stated, "While exercise has a salutary effect
on one's health, in most situations a doctor's recommendation of regular exercise is
no more related to the rendition of health care than the automobile ride one makes for
a doctor's appointment." Id. In other words, the exercise that the doctor had
"prescribed" did not directly relate to the health care he was providing to Stradley for
her weight, hypertension, and mobility issues. See Tex. Civ. Prac. & Rem. Code
Ann. § 74.001(a)(13).

 In its response to the concurring and dissenting opinions in Diversicare, the
majority of the supreme court made it clear that "[t]here may be circumstances that
give rise to premises liability claims in a healthcare setting that may not be properly
classified as health care liability claims . . ." such as "an unlocked window that gave
an intruder access to the [health care] facility or a rickety staircase that gave way
under [a patient's] weight." Diversicare, 185 S.W.3d at 854. Here, Beal is
complaining about an ordinary bed that gave way under his weight, a circumstance
that gives rise to a premises liability claim in a health care setting that may not be
properly classified as a health care liability claim. See id. We hold, therefore, that
the provision of a safe bed by Christus does not directly relate to Christus's treatment
of Beal for his drug addiction. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(a)(13); Stradley, 210 S.W.3d at 775. Thus, Beal's claims cannot be
characterized as health care liability claims under the safety element of the statute. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).

Improper Treatment by Staff

 Christus also argues that because Beal's claims about the bed are "inextricably
intertwined" with his claims about improper treatment by the staff following the bed's
collapse, Beal's claims about the bed constitute health care liability claims.

 During his deposition, counsel for Christus questioned Beal about Christus's
response to his fall:

 [CHRISTUS]: It seems to me that you're complaining a little bit
about the staff making you get up when you were
hurting and that sort of thing. Is that true?


 [BEAL]: No, that's not what it was, no.


 [CHRISTUS]: Okay. I'm trying to understand if that's part of your
complaints in this lawsuit. Do you believe that you
suffered any injury because of this staff requiring
you to get up out of [the] bed that had fallen?


 [BEAL]: Possibly.


 [CHRISTUS]: Okay. And do you believe you suffered injury by
the staff not calling an ambulance to come help you?


 [BEAL]: Possibly.


 [CHRISTUS]: Okay. And so you believe that it's possible that
these events, that the staff not adequately taking care
of you contributed to your injuries?


 [BEAL]: Yes.


 In support of its argument, Christus cites Groomes v. USH of Timberlawn, Inc.
for the proposition that when complained of acts or omissions are inextricably
intertwined with a patient's medical treatment, the claim qualifies as a health care
liability claim. See 170 S.W.3d 802, 806 (Tex. App.--Dallas 2005, no pet.). In that
case, Theresia Groomes, individually and as next friend of H.K., her minor son, sued
USH of Timberlawn for false imprisonment, intentional infliction of emotional
distress, and abuse of process when Timberlawn administered medication to H.K.
without Groomes's permission and did not discharge H.K. upon her request. Id. at
803. Timberlawn filed a motion to dismiss, arguing that Groomes's claims were
health care liability claims and should be dismissed for failure to file an expert report. 
Id. The trial court agreed and dismissed Groomes's claims. Id. The Dallas Court of
Appeals affirmed the lower court's decision, explaining,



 The underlying nature of all of Groomes' claims against Timberlawn
derive[s] from the doctors' decisions to administer medication and to
discontinue H.K.'s discharge. As a result, the hospital's alleged acts or
omissions are inextricably intertwined with the patient's medical
treatment and the hospital's provision of medical care.


 . . . [T]he trial court properly determined that Groomes' claims were
health care liability claims . . . because they arose "from health care
provided to H.K. [and] that his admission, discharge, and discontinuance
of discharge order were decisions made by physicians exercising their
medical judgment." 


Id. at 806 (emphasis added) (citations omitted). 

 In the instant case, Beal testified during his deposition that he may have
possibly suffered injury because the staff made him get up out of the collapsed bed
and did not call an ambulance, and that he believed that the staff's failure to properly
care for him after his fall contributed to his injuries. However, in his original
complaint, Beal alleged only that, on January 18, 2006, he was asleep in his bed at
Christus when the bed collapsed, he fell to the floor, and, as a proximate result of the
fall, he sustained injuries or suffered an aggravation of a pre-existing condition. The
collapse of the bed and his resulting fall, Beal alleged, were proximately caused by
Christus's negligence. Nowhere in his petition does Beal make any allegations
concerning Christus's response to his fall.

 While Beal may believe that the staff's response to his fall contributed to his
injuries, this is not the proper inquiry; the proper inquiry under Groomes is whether
Beal's claims derive from Christus's provision of medical services for drug
rehabilitation. See id. at 806; see also Shults, 166 S.W.3d at 504-05. Here, the
underlying nature of Beal's claims against Christus, as pled, derives from the bed's
collapse and not from Christus's provision of medical services for drug and alcohol
rehabilitation. Furthermore, Christus has cited no health care regulations or directives
peculiar to its status as a drug and alcohol treatment center nor any industry safety
standards that were allegedly violated in this instance and that would have justified
expert testimony. See Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 544 (Tex.
2004) (noting that one consideration in determining whether alleged act or omission
is inseparable part of rendition of health care is whether proving claim would require
specialized knowledge of a medical expert). Thus, given Beal's pleadings, Christus's
argument that Beal's claims about the bed are "inextricably intertwined" with his
claims about improper treatment by the staff following the bed's collapse is without
merit.

 We overrule Christus's second issue.







Conclusion

 We affirm the trial court's order denying Christus's motion to dismiss.


 

 Evelyn V. Keyes

 Justice

Panel consists of Justices Keyes, Higley and Wilson. (7)
1. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2006).
2. Christus cites Oak Park, Inc. v. Harrison, 206 S.W.3d 133 (Tex. App.-- Eastland 2006, no
pet.) for the proposition that a detoxification facility qualifies as a health care provider under
chapter 74. In that case, however, the sole issue was whether the trial court had erred in
denying the detoxification facility's motion to dismiss because the plaintiff's claims
constituted health care liability claims. Id. at 137. We disagree with Christus's reliance on
Oak Park because it did not discuss whether the detoxification facility was a health care
provider. Rather, it appears that the parties presumed that the detoxification facility qualified
as a health care provider under chapter 74.
3. A "health care institution" includes:



 
 an ambulatory surgical center;


 


 an assisted living facility licensed under Chapter 247, Health and Safety
Code;


 


 an emergency medical services provider;


 


 a health services district created under Chapter 287, Health and Safety
Code;


 


 a home and community support services agency;


 


 a hospice;


 


 a hospital;


 


 a hospital system;


 


 an intermediate care facility for the mentally retarded or a home and
community-based services waiver program for persons with mental
retardation . . . ;


 


 a nursing home; or


 


 an end stage renal disease facility licensed under Section 251.011,
Health and Safety Code.


 

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(11) (Vernon 2005).
4. The current version may be found at section 74.001(a)(13) of the Texas Civil Practice and
Remedies Code.
5. See Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex. 2005).
6. According to the Code Construction Act, "[w]ords and phrases shall be read in context and
construed according to the rules of grammar and common usage." Tex. Gov't Code Ann.
§ 311.011(a) (Vernon 2005).
7. The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First District of Texas
at Houston, sitting by assignment.