**VICTORIA GARDENS OF FRISCO, Appellant,**

v.

**Ann D. WALRATH, Appellee.**

No. 05–07–00578–CV.

Court of Appeals of Texas, Dallas.

April 24, 2008.

Rehearing Overruled July 22, 2008.

Marvin C. Moos, Deanna Dean Smith, Benjamin B. Leibman, Ebanks, Smith & Carlson, L.L.P., Houston, TX, for Appellant.

William J. Dunleavy, Law Offices of William J. Dunleavy, P.C., Thomas B. Cowart, Dallas, TX, for Appellee.

Before Justices WHITTINGTON, RICHTER, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Appellant Victoria Gardens of Frisco brings this interlocutory appeal of the trial court's denial of its motion to dismiss appellee's lawsuit for failing to comply with the expert-report requirements of Chapter

74 of the Texas Civil Practice and Remedies Code. We reverse and render judgment dismissing appellee's claims with prejudice.

## I. BACKGROUND

This case began when appellee, Ann D. Walrath, filed a Rule 202 petition seeking to take the oral deposition of a representative of Victoria Gardens to investigate a potential claim. Walrath sought to investigate, among other things, whether her deceased mother, Gladys Wiedel, had received adequate care while she was a resident at Victoria Gardens. She amended her Rule 202 petition once, then filed a second amended petition in which she asserted a breach-of-contract claim against Victoria Gardens. As damages, she sought only reimbursement of the amounts paid on behalf of Wiedel during her residency at Victoria Gardens, plus attorney's fees. Walrath further asserted in that petition that she "does not now make any allegation that the breach of the parties' contract proximately resulted in injury to or the death of Gladys Wiedel."

Victoria Gardens moved for summary judgment, contending that Walrath's contract claim was merely an artfully pleaded health care liability claim and that Walrath's contract claim failed on the merits because she herself suffered no personal damages as a result of Wiedel's stay at Victoria Gardens. Walrath filed both a response and a third amended petition. In her third amended petition, she added a health care liability claim in which she alleged that Victoria Gardens' negligence proximately caused injuries to Wiedel and ultimately her death. She also prayed for typical survival and wrongful-death damages for the first time. The trial judge signed an order granting Victoria Gardens' motion for summary judgment and dismissing Walrath's claim for breach of contract.

Walrath filed and served an expert report less than 120 days after filing her third amended petition. Victoria Gardens filed a second motion for summary judgment based on the statute of limitations. The trial court denied that motion. Then Victoria Gardens filed a motion to dismiss based on Walrath's failure to serve an expert report within 120 days after Walrath filed her second amended petition. The trial court denied that motion as well. Victoria Gardens filed this interlocutory appeal from that order pursuant to section 51.014(a)(9) of the civil practice and remedies code. It raises two issues on appeal.

## II. ANALYSIS

### A. Walrath pleaded a "health care liability claim" in her second amended petition, so her expert report was untimely.

In Victoria Gardens' first issue it contends that the trial court erred by failing to conclude that Walrath's second amended petition stated a "health care liability claim" within the meaning of Chapter 74 of the civil practice and remedies code. This is a question of law that we review de novo. *Boothe v. Dixon,* 180 S.W.3d 915, 919 (Tex.App.-Dallas 2005, no pet.).

The version of section 74.351(a) that applies to this case required a plaintiff bringing a health care liability claim to serve an expert report and curriculum vitae within 120 days after filing the claim. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007)). A plaintiff's failure to satisfy that requirement entitled the defendant physician or health-care provider, on prop-

er motion, to dismissal with prejudice and recovery of reasonable attorneys' fees. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2007).

If Walrath's second amended petition stated a health care liability claim, her expert report was untimely, and Victoria Gardens was entitled to dismissal with prejudice. Chapter 74 assigns "health care liability claim" a three-part definition:

"Health care liability claim" means a cause of action [1] against a health care provider or physician [2] for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, [3] which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(13) (Vernon 2005) (numbering added). In applying this definition to a pleading, we examine the underlying nature of the claim and not merely the label that the plaintiff has attached to her claim. *Groomes v. USH of Timberlawn, Inc.*, 170 S.W.3d 802, 805 (Tex.App.-Dallas 2005, no pet.).

Walrath does not dispute that Victoria Gardens is a health care provider, as required by the first element. As to the second element, Victoria Gardens argues that the breach-of-contract claim pleaded in the second amended petition was founded on alleged "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." Walrath does not dispute Victoria Gardens' contention, and we agree with Victoria Gardens. In her second amended petition, Walrath alleged that Victoria Gardens breached the contract by failing "[t]o provide Weidel with adequate nursing care" and by failing "[t]o comply with the requirements of Texas law," namely, various provisions of the Texas Administrative Code requiring nursing homes to provide for their residents' safety and general well-being. The substance of this breach-of-contract claim is that Victoria Gardens departed "from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care," so it satisfies the second element of the definition. *See Devereaux v. Harris County Hosp. Dist.*, No. 01–05–00706–CV, 2007 WL 852618, at *4 & n. 2 (Tex.App.-Houston [1st Dist.] March 22, 2007, no pet.) (mem.op.) (breach-of-contract claim predicated on hospital's failure to provide a "reasonably safe environment and properly trained employees" to patient was a health care liability claim).

This case turns on the meaning of the third element of a health care liability claim, the requirement that the breach of the relevant standard of care must have "proximately result[ed] in injury to or death of a claimant." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(13). According to Walrath, this third element is satisfied only if the plaintiff seeks traditional tort damages for a claimant's bodily injury or death. In her second amended petition, Walrath sought to recover only the amounts paid on Weidel's behalf for her to live at Victoria Gardens' facility—which she describes on appeal as "reliance contract damages"—and not tort damages for Weidel's death or bodily injuries. Moreover, she expressly averred that she was not, at that time, alleging that Victoria Gardens' breach of contract caused Weidel's injury or death. Therefore, she concludes, she did not assert a health care liability claim until she sought tort dam-

ages in her third amended petition, and her expert report was timely.

■ Although Walrath's interpretation of section 74.001(13) is creative, we cannot agree with it. Her argument depends on the insertion of an additional element to the statutory definition that simply is not there. Under the third element of the definition, a claim is a health care liability claim if the defendant's wrongful conduct "proximately results in injury to or death of a claimant." Walrath's interpretation would require us to add an additional phrase to the third element, along the lines of "for which the claimant seeks traditional tort damages." But the definition simply does not include such a requirement, and we find no warrant for inserting it. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995) ("[C]ourts should not insert words in a statute except to give effect to clear legislative intent."). Indeed, the concluding words of the definition, "whether the claim sounds in tort or contract," suggest that the legislature did not intend for the plaintiff to be able to evade the "health care liability claim" label simply by selecting a contract-based theory of damages. *See Boothe,* 180 S.W.3d at 919 ("Artful pleading cannot avoid the requirements of section 74.351 when the essence of the suit is a health care liability claim."). Thus, we conclude that the third element turns on whether the breaches of the applicable standards of care proximately caused an injury or death, and not on the legal damages theory selected by the claimant. Under the plain language of section 74.001(13), if a plaintiff alleges that a health care provider breached an applicable standard of health care, and the alleged breach proximately caused injury to or the death of a claimant, the claim is a health care liability claim, regardless of

the kind of damages prayed for by the plaintiff.

■ Walrath argues that the statutory definition of "claimant" supports her position that "health care liability claim" excludes claims in which the plaintiff seeks to recover contract damages only. Chapter 74 defines "claimant" as follows:

> "Claimant" means a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim. All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant.

Tex. Civ. Prac. & Rem.Code Ann. § 74.001(2) (Vernon 2005). It is true that the definition of "claimant" in section 74.001(2) suggests that the drafters assumed that the damages being sought in a health care liability claim would ordinarily be "damages as the result of the bodily injury or death" of the patient, i.e., traditional tort damages. But the fact remains that the definition of "health care liability claim" itself contains no limitation based on the type of damages being sought. Again, if a plaintiff alleges that a health care provider breached an applicable standard of health care, and the alleged breach proximately caused injury to or the death of a claimant, the claim is a health care liability claim, regardless of the kind of damages prayed for by the plaintiff.

The remaining question is whether Walrath avoided triggering Chapter 74 with her second amended petition by expressly stating therein that she "does not now make any allegation that the breach of the parties' contract proximately resulted in injury to or the death of Gladys Weidel." Elsewhere in that petition, Walrath alleged that Victoria Gardens' breaches of contract were "a direct and proximate cause of damages," but she immediately

qualified that allegation by adding, "which damages Plaintiff alleges are equal to the amount Defendant charged and which amounts were paid on behalf of Weidel for each day she was a resident at Defendant's facility." Thus, on its face, Walrath's second amended petition did not affirmatively state the third element of a health care liability claim, that Victoria Gardens' breaches of applicable standards of care "proximately result[ed] in injury to or death of a claimant." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(13).

█ Later in the litigation, however, Walrath abandoned her earlier reluctance and affirmatively pleaded that Victoria Gardens' failure to provide proper nursing care had proximately caused injuries to Weidel. Moreover, she contended in a summary-judgment response that her health care liability claim arose from "the same transaction or occurrence—the inadequate care provided to Gladys Weidel—that prompted the breach of contract claim." In that same document, she drew the causal connection between the alleged breaches of contract and Weidel's injuries as follows:

> [Walrath] timely filed for Second Amended Petition, which alleges a claim of breach of contract based on Defendant's lack of care and/or inadequate care for her mother. [Walrath's] **Third Amended Petition also makes a claim based upon the same lack of care and/or inadequate care,** although this present claim sounds in negligence and asserts a claim for personal injury and wrongful death.

(Emphasis added.) The question thus becomes whether Victoria Gardens was entitled to use Walrath's assertions in later filings to supply the allegation of proximate causation of injury or death that she had artfully omitted from her second amended petition. We conclude that the answer must be yes. Walrath's argument that she could avoid triggering Chapter 74 by omitting any allegation of injury or death and by praying only for contract damages is merely another variation of the artful-pleading tactic that Texas courts have frequently condemned. *Lee v. Boothe,* 235 S.W.3d 448, 451 (Tex.App.-Dallas 2007, pet. denied) (collecting cases). The legislature did not intend for plaintiffs to be able to avoid the requirements of Chapter 74 so easily. *Cf. In re Jorden,* 51 Tex. Sup.Ct. J. 657, 661, 249 S.W.3d 416, 424 (2008) (plaintiffs may not use Texas Rule of Civil Procedure 202 to circumvent the automatic discovery stay imposed by Chapter 74). We conclude that Victoria Gardens was entitled to use Walrath's later filings to supply the previously missing allegation that Victoria Gardens' allegedly wrongful conduct—the conduct that Walrath alleged as a breach of contract in the second amended petition—proximately resulted in Weidel's injuries and death. Those filings show that the cause of action stated in Walrath's second amended petition was a health care liability claim that triggered the 120–day deadline for serving an expert report.

█ Walrath argues for the first time on appeal that Victoria Gardens is judicially estopped from contending that Walrath's claims are health care liability claims. In its second motion for summary judgment, Victoria Gardens argued that Walrath's health care liability claim was time-barred because she first alleged that claim in her third amended petition and filed that petition more than two years after Weidel left the Victoria Gardens facility. In its motion to dismiss, however, Victoria Gardens argued that Walrath first asserted a health care liability claim in her second amended petition. Walrath argues that Victoria Gardens cannot reverse positions in this fashion. We conclude that

this issue has not been preserved because it was not raised in the trial court. At oral argument, Walrath invoked the general principle that we may affirm the trial court's order if it is correct on any legal theory applicable to the case. *See, e.g., Gulf Land Co. v. Atl. Ref. Co.,* 134 Tex. 59, 131 S.W.2d 73, 84 (1939). A more complete statement of the rule is that "[w]e must uphold a lower court judgment on any legal theory *before it,* even if the court gives an incorrect reason for its judgment." *Guar. County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986) (emphasis added); *accord In re Estate of Jones,* 197 S.W.3d 894, 901 (Tex.App.-Beaumont 2006, pet. denied) ("A reviewing court must uphold a correct trial court judgment on any legal theory properly before the trial court."). We will not affirm the trial court's order based on a legal theory not presented to the trial court and to which Victoria Gardens had no opportunity to respond.

We sustain Victoria Gardens' first issue on appeal.

**B. Victoria Gardens' motion to dismiss was not untimely.**

In the trial court, Walrath argued that Victoria Gardens' motion to dismiss was untimely because it was not filed within 21 days after Walrath served her expert report. In Victoria Gardens' second issue on appeal, it contends that the 21–day deadline did not apply to its motion to dismiss. Although Walrath does not respond to Victoria Gardens' second issue in her appellate brief, we must address the issue because the trial court may have relied on it in denying Victoria Gardens' motion to dismiss.

In a case involving a health care liability claim, a defendant whose conduct is implicated in an expert report "must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). In this case, Victoria Gardens filed its motion to dismiss more than five months after Walrath served her expert report and more than a year after Walrath's expert report was due. Walrath argued in the trial court that Victoria Gardens waived its right to seek dismissal under the 21–day deadline in section 74.351(a). Victoria Gardens argued in the trial court, and it reiterates on appeal, that the 21–day deadline did not apply because Victoria Gardens' motion to dismiss attacked the timeliness of Walrath's expert report rather than the sufficiency of its substance.

We agree with Victoria Gardens. The text of section 74.351(a) limits the 21–day deadline's application to objections to the "sufficiency" of an expert report. We construe "sufficiency" to mean the sufficiency of the substance of a report that has been timely served, and we conclude that expanding "sufficiency" to encompass timeliness would do impermissible violence to the plain language of the statute. *See Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002) ("When construing a statute, we ascertain the Legislature's intent from the plain meaning of the actual language used."). Other courts of appeals have reached the same conclusion. *Poland v. Grigore,* 249 S.W.3d 607, 616 (Tex.App.-Houston [1st Dist.] 2008, no pet. h.); *Smith v. Hamilton,* No. 09–07–128–CV, 2007 WL 1793754, at *4 (Tex.App.-Beaumont June 21, 2007, no pet.) (mem.op.). We conclude that a motion to dismiss complaining that the claimant's expert report was not served within the statutory deadline is not subject to the 21–day deadline.

We sustain Victoria Gardens' second issue on appeal.

## C. Victoria Gardens is not entitled to recover its attorneys' fees.

██ Victoria Gardens prays that we render a judgment of dismissal in its favor and remand to the trial court solely for an assessment of attorneys' fees and costs. Chapter 74 provides that the trial court "shall" award a health care provider its attorneys' fees and costs if the health care provider prevails on an expert-report motion to dismiss. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b)(1). In this case, however, Victoria Gardens did not pray for such relief in its motion to dismiss. Instead, it prayed only for dismissal with prejudice and for general relief. We conclude that the prayer for general relief was not sufficient to preserve Victoria Gardens' right to recover its fees and costs under section 74.351(b)(1). *See Birdwell v. Birdwell,* 819 S.W.2d 223, 229 (Tex.App.-Fort Worth 1991, writ denied) (trial court erred by awarding attorneys' fees in connection with summary-judgment motion that included only general prayer for relief).

### III. CONCLUSION

Having sustained Victoria Gardens' issues on appeal, we reverse the trial court's order denying Victoria Gardens' motion to dismiss for failure to file an expert report, and we render judgment dismissing Walrath's pending claims against Victoria Gardens with prejudice to their refiling.