OAK PARK, INC., Individually and d/b/a Desert Springs Medical Center, Appellant,

v.

James HARRISON, Appellee.

No. 11–05–00298–CV.

Court of Appeals of Texas, Eastland.

Sept. 14, 2006.

Katherine K. Elrich, Charlie S. Reed, Michael L. Hurst, Hermes Sargent Bates, L.P., Dallas, for appellant.

Steve Hershberger, Midland, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

**OPINION**

TERRY McCALL, Justice.

Oak Park, Inc., Individually and d/b/a Desert Springs Medical Center brings this interlocutory appeal from an order denying its motion to dismiss James Harrison's suit for failure to file an expert report under Section 74.351 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (Vernon Supp.2006). The sole issue on appeal is whether Harrison's claims against Desert Springs are health care liability claims under the Texas Medical Liability and Insurance Improvement Act set forth in Tex. Civ. Prac. & Rem.Code Ann. ch. 74 (Vernon 2005 & Supp.2006). Because we conclude that Harrison's claims are health care liability claims, we reverse and render.

*Factual Background*

On October 7, 2004, Harrison was admitted to Desert Springs for inpatient detoxification treatment for addiction to prescription pain medications. The incident in question occurred that night. In his petition, Harrison alleged that, on October 7, 2004, at about 8:00 p.m., he asked a nurse if he could go outside to smoke. The nurse instructed Harrison to wait in a common area of Desert Springs until a counselor returned from a meeting. Harrison waited for the counselor by an exterior door in the common area. Harrison alleged that a female psychological patient was also in the common area and that, when the counselor unlocked the door and started to come into the room, the psychological patient attempted to escape. The staff at Desert Springs attempted to restrain the psychological patient. Harrison alleged that a melee ensued in which he was slammed into the wall by three nurses, a male counselor, and the psychological patient. Harrison alleged that he sustained serious bodily injuries as a result of the incident. He also alleged that a stimulator, which had been implanted into his body for treatment relating to a previous injury, was damaged in the incident.

Harrison pleaded common law negligence and premises liability claims against Desert Springs. He alleged that Desert Springs's negligence proximately caused the incident in question and his resulting injuries and damages. Specifically, Harrison alleged that Desert Springs had been negligent in the following respects: (1) in failing to keep such lookout as a person of ordinary prudence would have kept under the same or similar circumstances; (2) in

failing to timely or properly segregate the psychological patient from him; (3) in failing to timely inspect the area in the vicinity of him and the psychological patient; (4) in failing to warn him of the psychological patient; and (5) in failing to provide security for him. Harrison alleged that employees, agents, or representatives of Desert Springs committed the above acts or omissions while in the course and scope of their employment with Desert Springs. As such, Harrison sought to impose liability against Desert Springs under a respondeat superior theory. Harrison also alleged that Desert Springs had reason to know that the psychological patient posed a danger to other patients, that the psychological patient posed a safety hazard to other patients, and that Desert Springs had actual or constructive notice of the safety hazard but that it failed to remove the hazard. Harrison alleged that each of these acts and omissions constituted negligence and proximately caused the incident in question and his resulting injuries and damages. Harrison sought to recover various personal injury damages, including past and future medical expenses, past and future physical impairment, past and future pain and suffering, and past and future mental anguish. He did not seek to recover any property damages for the alleged damage to the stimulator.

On June 17, 2005, Desert Springs filed a motion to dismiss Harrison's claims with prejudice. Desert Springs sought dismissal on the ground that Harrison had failed to serve an expert report as required by Section 74.351.[1] In a response to the motion to dismiss, Harrison asserted that his claims were not health care liability claims and that, therefore, the expert report requirements in Section 74.351 did not apply to his claims. Harrison stated that he was not complaining about the medical treatment provided to him. Rather, according to Harrison, "the dispute is one of safety of allowing a violent psychological patient to be in the same room as a patient who is attempting detoxification."

After a hearing on Desert Springs's motion to dismiss, the trial court concluded that Harrison's claims did not constitute a health care liability claim. On September 27, 2005, the trial court entered an order denying Desert Springs's motion to dismiss. On October 14, 2005, the Texas Supreme Court issued its decision in *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex.2005). Based on the *Diversicare* decision, Desert Springs filed a motion for reconsideration of the trial court's ruling on its motion to dismiss. The trial court entered an order denying the motion for reconsideration.

Desert Springs has filed this appeal from the trial court's order denying its motion to dismiss as permitted by TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon Supp.2006).[2] An amicus curiae brief generally supporting Harrison's position has been received from Federated Mutual Insurance Company, a workers' compensation insurance carrier that has provided workers' compensation benefits to Harrison.

---

1. Desert Springs also sought to recover reasonable attorney's fees and costs of court under Section 74.351(b)(1). Desert Springs waived its request for attorney's fees and costs at the hearing on the motion to dismiss.

2. Harrison asserts in his brief that this court lacks jurisdiction in this case because there is not a final, appealable judgment. However, Section 51.014(a)(9) provides, "A person may appeal from an interlocutory order of a district court ... that ... denies all or part of the relief sought by a motion under Section 74.351(b)." Therefore, this court has jurisdiction in this case under Section 51.014(a)(9).

### Issue on Appeal

In a sole appellate issue, Desert Springs argues that the trial court erred in denying its motion to dismiss because Harrison's claims constituted health care liability claims.

### Standard of Review

■ Ordinarily, we review a trial court's denial of a motion to dismiss filed under Section 74.351 under an abuse of discretion standard. *Kendrick v. Garcia*, 171 S.W.3d 698, 702–03 (Tex.App.-Eastland 2005, pet. filed); *In re Watumull*, 127 S.W.3d 351, 354 (Tex.App.-Dallas 2004, orig. proceeding). However, when the issue, as in this case, involves the applicability of Chapter 74 to the plaintiff's claims and requires an interpretation of the statute, we apply a de novo standard of review. *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied).[3]

### Health Care Liability Claims

The expert report requirements set forth in Section 74.351 apply to health care liability claims. In a health care liability claim, the claimant must serve an expert report on each party or the party's counsel not later than the 120th day after the date the original petition is filed. *See* Section 74.351(a). Section 74.001(a)(13) defines "health care liability claim" as follows:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly relat-

ed to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

The sole dispute in this case is whether Harrison's claims are health care liability claims as defined in Section 74.001(a)(13). Desert Springs argues that all of Harrison's claims are, in substance, health care liability claims under the above definition. Harrison argues that his claims are common law negligence and premises liability claims that do not fall within the definition of health care liability claims.

■ A plaintiff cannot use artful pleadings to avoid the requirements of Chapter 74 when the essence of the suit is a health care liability claim. *Garland Comty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex.2004). To determine whether a cause of action is a health care liability claim, we examine the underlying nature of the claim and are not bound by the form of the pleading. *Diversicare*, 185 S.W.3d at 847; *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994). A cause of action is a health care liability claim if it is based on a claimed departure from an accepted standard of medical care, health care, or safety of the patient. *Diversicare*, 185 S.W.3d at 848. A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services. *Id.* The necessity of expert testimony from a medical or health care professional to prove a claim may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical care or health care services. *Id.* A cause of action alleges a departure from

---

**3.** Harrison urges us to apply traditional and no-evidence summary judgment standards of review. Summary judgment standards of review do not apply to trial court's rulings on

motions to dismiss under Section 74.351. Rather, the above cases set forth the well-established standards of review applicable in such cases.

accepted standards of safety if the acts or omissions complained of necessarily implicate the accepted standards of safety applicable to the health care provider. *Id.* at 855. Safety is defined as being "untouched by danger; not exposed to danger; secure from danger, harm or loss." *Id.* (quoting BLACK's LAW DICTIONARY 1336 (6th ed.1990)). Professional supervision, monitoring, and protection of the patient population at a health care facility necessarily implicate the accepted standards of safety. *Id.*

*Diversicare* involved claims that Rubio, a nursing home resident, had been sexually assaulted by another resident of the nursing home. Rubio's daughter brought suit on Rubio's behalf against Diversicare, the owner of the nursing home. 185 S.W.3d at 845. In the petition, Rubio alleged that multiple incidents of sexual assault had occurred over a six-month period as a result of Diversicare's failure to adequately supervise and monitor Rubio to protect her from sexual abuse and assault from the other resident. *Id.* Rubio asserted negligence and breach of contract claims in her petition. *Id.*

The issue before the supreme court in *Diversicare* was whether Rubio's claims were health care liability claims as defined in Section 74.001(a)(13). In analyzing the issue, the supreme court examined the nature of health care services provided by nursing homes. *Id.* at 849–50. The supreme court stated that "[t]he level and types of health care services provided vary with the needs and capabilities, both physical and mental, of the patients." *Id.* at 850. A consideration of various medical issues determines the level and types of health care given to the individual patients and to the patient population as a whole. The supreme court explained:

> Some patients need psychological treatment, while others require none. Some

patients require enhanced supervision and additional staff or physical restraints to protect them from injuring themselves and others or to protect them from other patients, while other patients do not require such protections. The nature and intensity of care and treatment, including professional supervision, monitoring, assessment, quantities and types of medication, and other medical treatments are judgments made by professionals trained and experienced in treating and caring for patients and the patient populations in their health care facilities.

*Id.* Given the professional medical judgments involved in providing health care to the patients, the supreme court concluded that "[t]he supervision and monitoring of Rubio and other nursing home residents and nursing services provided to Rubio by Diversicare's staff were part of her health care." *Id.* Thus, Rubio's claims that Diversicare failed to adequately monitor and supervise her to protect her from the other resident alleged a departure from accepted standards of medical care or health care. Because the supervision of Rubio and the resident who assaulted her and the protection of Rubio were inseparable from the health care and nursing services provided to Rubio, the supreme court held that Rubio's claims were health care liability claims. *Id.* at 849.

In *Diversicare*, the supreme court explained that "[p]rofessional supervision, monitoring, and protection of the patient population necessarily implicate the accepted standards of safety under [Chapter 74]." *Id.* at 855. Therefore, Rubio's claims also alleged a departure from accepted standards of safety applicable to the nursing home. Because the supervision of Rubio and the resident who assaulted her were inseparable from the accepted standards of safety applicable to the nurs-

ing home, the supreme court held that Rubio's claims were health care liability claims under the safety element of Section 74.001(a)(13). *Id.* at 855.

Harrison's claims are similar to the claims in *Diversicare*. The essence of Harrison's claim is that, although Desert Springs knew that the psychological patient posed a danger to him and other patients, Desert Springs did not protect him—either by warning, segregation, or security—from the psychological patient. In the trial court, Harrison characterized the essence of his claim as follows: "[T]he dispute is one of safety of allowing a violent psychological patient to be in the same room as a patient who is attempting detoxification." Thus, the act or omission complained of was Desert Springs's failure to protect Harrison from the psychological patient.

Whether to allow a psychological patient to be in the same room as a detoxification patient raises the medical issues presented in *Diversicare*. Similar to *Diversicare*, a consideration of various issues determines the level and types of treatment given to the individual patients at Desert Springs and to the patient population as a whole. Some patients may need enhanced supervision or physical restraints to prevent them from injuring others, while other patients do not require such measures. Some patients may need to be segregated from the remainder of the patient population to prevent them from harming others. Desert Springs must decide these issues on a patient-by-patient basis, taking into account the needs of the individual patients and the patient population as a whole. The level and types of health care given including professional supervision, monitoring, and protection of Harrison and the other patients are "judgments made by professionals trained and experienced in treating and caring for patients and pa-

tient populations." *See Diversicare*, 185 S.W.3d at 850.

■ Under *Diversicare*, the supervision of Harrison and the psychological patient and the protection of Harrison are inseparable from the health care services provided by Desert Springs to Harrison. *Id.* at 849. Harrison's claims allege a departure from accepted standards of medical or health care because the act or omission complained of—the failure to protect Harrison from the psychological patient—is inseparable from the health care services provided to him. Additionally, the professional supervision, monitoring, and protection of Harrison and the patient population at Desert Springs are inseparable from the accepted standards of safety applicable to Desert Springs. *Id.* at 855. Thus, Harrison's claims also allege a departure from accepted standards of safety applicable to Desert Springs. For both of these reasons, Harrison's claims are health care liability claims under Chapter 74. Because Harrison's claims are health care liability claims, Harrison was required to serve an expert report under Section 74.351.

*Diversicare* also establishes that expert testimony from a medical or health care professional is necessary to prove Harrison's claims. Harrison alleged that Desert Springs was negligent in failing to timely or properly segregate the psychological patient from him. The determination of issues relating to protection of a patient population including whether or not to segregate a psychological patient from the remainder of the patient population are matters of professional medical judgment. *Diversicare*, 185 S.W.3d at 850. The standards of care for protection of patients at a health care facility are not matters within the common knowledge of the general public. *See id.* at 851 ("The general public is not trained to evaluate whether a potential

attacker admitted to a health care facility should be physically or chemically restrained."). Therefore, testimony from an expert in a health care field is required to prove applicable standards of care and alleged breaches of those standards of care. *Id.* at 851. The necessity of expert testimony from a medical or health care professional to prove Harrison's claims supports the conclusion that Harrison's claims are health care liability claims. *Id.* at 848.

In the trial court, Harrison relied heavily on *Bush v. Green Oaks Operator, Inc.,* 39 S.W.3d 669 (Tex.App.-Dallas 2001, no pet.). In *Bush,* a psychiatric inpatient sued the hospital after she was attacked by a fellow patient. She alleged that the hospital knew of the fellow patient's propensity for violence and wrongfully failed to place the fellow patient in a segregated unit. She also alleged that the hospital had been negligent in failing to warn her of the fellow patient's propensity for violence and in failing to maintain the premises in a safe manner. *Id.* at 671. In *Bush,* the Dallas court held that the plaintiff's claims were not health care liability claims. *Id.* at 673. The court stated that the breach alleged by the plaintiff had not occurred as part of the rendition of medical services to her. *Id.* At the hearing on Desert Springs's motion to dismiss, Harrison's counsel stated that "the governing case right now is the *Bush* case, and that is the one case that is most clearly analogous to our situation." In *Diversicare,* the supreme court expressly disapproved of the *Bush* decision to the extent it had held that the plaintiff's claim against the hospital for the assault by the fellow patient was not a health care liability claim. *Diversicare,* 185 S.W.3d at 853. Thus, *Bush* provides no support for Harrison's position.

■ On appeal, Harrison argues that this case may present a "hybrid scenario" in which some of his claims are health care liability claims under Chapter 74 and some of his claims are not health care liability claims. Federated makes a similar argument in its amicus curiae brief. In his petition, Harrison alleged that the employees, agents, and representatives of Desert Springs were negligent "[i]n failing to keep such lookout as a person of ordinary prudence would have kept under the same or similar circumstances." Based on this alleged negligent conduct of the employees, Harrison sought to impose liability against Desert Springs under a vicarious liability theory. Harrison contends that this vicarious liability theory is not a health care liability claim because he is not complaining about medical care with respect to this claim. In his brief, Harrison asserts "that the portion of the case where Harrison was slammed into the wall twice is not governed by a medical standard of care." Instead, Harrison argues that his vicarious liability theory is governed by "a common law duty [on the part of Desert Springs's employees] to avoid wrestling with a patient in the presence of another patient." Harrison contends "that [he] should have been separated from the scrum at the start of the melee, or at least before the second encounter with the wall." Likewise, Federated contends that Harrison's vicarious liability claim does not "implicate Desert Springs's judgment with respect to the formation of policy involving the handling or restraint of patients [or] criticize any health care related judgment."

Harrison cannot recast his health care liability claims as general negligence or premises liability claims in order to avoid Chapter 74's statutory requirements. *Sorokolit,* 889 S.W.2d at 242. No matter how Harrison characterizes his vicarious liability claim, the claim is predicated on Desert Springs's failure to protect him from the psychological patient. Harrison's claim

arises from being in close proximity to the psychological patient. Had Desert Springs not permitted the psychological patient to be in the common area, the incident would not have occurred. As explained above, the decision to allow a psychological patient to be in a common area, as opposed to segregating the psychological patient from other patients, requires the exercise of professional judgment. Although Harrison characterizes his claim as being based on ordinary negligence of Desert Springs's employees, the underlying nature of his claim is that Desert Springs allowed the psychological patient to be in the same room with him and that, therefore, Desert Springs failed to protect him from the psychological patient. As such, Harrison's vicarious liability claim is a health care liability claim under Chapter 74. *See Diversicare*, 185 S.W.3d at 849–50.

Federated argues that *Diversicare* is distinguishable from this case because *Diversicare* involved a facility's failure to prevent an injury caused by another patient and this case involves an injury caused by employees of Desert Springs. Federated asserts that, while "professional judgment relating to the provision of health care is arguably implicated" in cases involving the failure to prevent an injury caused by another patient, "the duty has been properly cast pursuant to traditional common-law standards" in cases involving injury caused by the employee of a health care facility. Harrison did not allege that an employee of Desert Springs assaulted him. Rather, he alleged that he was injured when Desert Springs's employees attempted to restrain the psychological patient. The principles applied by the supreme court in *Diversicare* apply equally to the facts in this case. *Diversicare* establishes that Harrison's claims are health care liability claims—whether he claims that the psychological patient injured him or Desert Springs's employees injured him—because the supervision of Harrison and the psychological patient and the protection of Harrison are inseparable from the health care services provided by Desert Springs to him. *See Diversicare*, 185 S.W.3d at 849.

Harrison alleged that, in the incident, he sustained damage to a stimulator that had been implanted into his body for treatment of previous injuries. Federated argues that Harrison's allegations constituted a claim for property damages to the stimulator and that Chapter 74 does not apply to property damage claims. However, although Harrison alleged that the stimulator was damaged in the incident, he did not seek any recovery of property damages. Instead, he requested only the recovery of personal injury damages. Because Harrison did not allege a property damage claim, we need not determine whether Chapter 74 applies to property damage claims.

### This Court's Ruling

Harrison's claims are health care liability claims. Because Harrison failed to serve an expert report as required by Section 74.351, the trial court erred in denying Desert Springs's motion to dismiss. We, therefore, sustain Desert Springs's appellate issue. We reverse the trial court's order denying Desert Springs's motion to dismiss and render judgment dismissing Harrison's claims with prejudice.