COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-118-CV

RICHARD J. HARE, M.D. APPELLANT

V.

BETTY REED GRAHAM, INDIVIDUALLY  APPELLEE

AND AS SURVIVING SPOUSE AND 

REPRESENTATIVE OF THE ESTATE OF 

LEE GRAHAM

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In two issues, Appellant Richard J. Hare, M.D. asserts that the trial court erred by denying his motion to dismiss with prejudice a lawsuit filed by Betty Reed Graham (“Graham”), Individually and as Surviving Spouse and Representative of the Estate of Lee Graham.  We affirm.

II.  Factual and Procedural Background

A. Alleged Negligence/Intentional Infliction of Emotional Distress/Interference

Graham alleged in her “Plaintiff’s Original Petition for Damages” that Lee Graham died on July 14, 2004, at Plaza Medical Center of Fort Worth and that “[o]n or about July 15, 2004, Defendant Richard J. Hare, M.D. [a licensed pathologist], performed an unauthorized autopsy on the body of Decedent without Plaintiff’s voluntary permission.”  Graham also alleged that employees of Plaza Medical Center misled and intentionally deceived her regarding consent for an autopsy to be performed on Lee Graham.  As articulated by Graham, 

Plaintiff alleges that Defendant violated her right to have her husband’s body preserved and buried in the condition in which he died, without her having thoughts of him being cut unnecessarily prior to his burial. . . . It is well and long established in Texas that the right to bury a corpse and preserve its remains is a legal right which is recognized, and it is held that the courts will protect such right and the right to dispose of a corpse by a decent burial which includes the right to possession of the body in the same condition in which death leaves it.  This right belongs to the widow.  
It is also held that a widow has the primary and paramount right to the possession of her husband’s body above that of any other person.  
Any interference with such right of possession of the body of a deceased by mutilation or otherwise disturbing the body without, the consent of the next of kin is an actionable wrong for which a claim for damages may be maintained. [Citations omitted.]

Betty Graham sought to recover damages for intentional infliction of emotional distress, negligent mishandling of a corpse, and interference with the right of possession of the body of the deceased.  Dr. Hare asserted that the suit was a health care liability claim and filed his motion to dismiss with prejudice based upon Graham’s undisputed failure to serve an expert report and curriculum vitae as required by section 74.351 of the Texas Civil Practice and Remedies Code.  In response, Graham asserted that the “claims in this matter are for ordinary negligence and not malpractice, therefore, no expert report is required [under] Chapter 74 of the Texas Civil Practice & Remedies Code, [and that the claims] lie outside of the medical liability statute because they are not health care liability claims.”

B.  Alleged Breach of Contract and Fraud

Further, Graham argued that she had entered into a “contract” with Plaza Medical Center when Graham “requested to have her deceased husband’s remains removed from the [hospital] premises,” that “Plaza Medical Center [breached the contract] by releasing the body of Plaintiff’s husband to the funeral home,” and that certain acts and representations by Plaza amounted to fraud.  Additionally, Graham’s response to Hare’s motion to dismiss stated that she had alleged “fraud” against Dr. Hare.  Dr. Hare responded that Graham did not plead breach of contract or fraud against him but only against the hospital.  Graham replied that “[t]he petition against both parties were for the actions of [Dr. Hare], therefore all defendants, including [Dr. Hare], are liable for all causes of action pled by [Graham] as joint tortfeasors,” citing 
Barnes v. Moro
, 76 S.W.2d 831, 832 (Tex. Civ. App.—Waco 1934, no writ).

The 
Barnes
 case is a plea of privilege case in which the court observed that an employer may be held jointly liable with his employee for the acts of his employee when the employee is acting within the scope of his employment.  
Id
.  Such is not the case before us.  An examination of Graham’s petition plainly pleads three causes of action under the heading “Defendant Richard J. Hare, M.D.’s Liability,” none of which involve fraud or breach of contract.  The petition does plead fraud under the heading “Defendant Plaza Medical Center’s Liability,” and it alleges that the hospital is vicariously liable for the causes of actions alleged against Dr. Hare while he acted in the scope and course of his employment in a master/servant relationship, thereby imputing liability to the hospital for Dr. Hare’s conduct.  It is not alleged that Dr. Hare is responsible for the hospital’s conduct.  Therefore, we agree with Dr. Hare that Graham did not allege claims of fraud or breach of contract against Dr. Hare in her live pleading before the trial court.  

C.  Orders of the Court

On December 11, 2006, the trial court signed an order of dismissal.  The trial court granted Dr. Hare’s motion to dismiss with prejudice and dismissed with prejudice Graham’s claim against Dr. Hare. 

Then, on December 21, 2006, the trial court signed an order vacating the order of dismissal, and on March 20, 2007, the trial court signed an order denying Dr. Hare and Plaza’s motions to dismiss.  This
 
appeal followed
.

III.  Issues

The two issues brought in this appeal by Dr. Hare are (1) whether this is a health care liability claim arising from the rendition of medical care and subject to the expert report requirement of section 74.351(a) of the Texas Civil Practice and Remedies Code and (2) whether the trial court erred by denying Dr. Hare’s motion to dismiss with prejudice.  

A.  Standard of Review

Ordinarily, a trial court’s denial of a motion to dismiss filed under section 74.351 of the Texas Civil Practice and Remedies Code is reviewed under an abuse of discretion standard, 
Kendrick v. Garcia
, 171 S.W.3d 698, 702-03 (Tex. App.—Eastland 2005, pet. denied), unless, as in the case here, the applicability of Chapter 74 to Graham’s claims requires interpretation.  In that case, we apply a de novo standard of review to the question of law.  
Oak Park, Inc. v. Harrison
, 206 S.W.3d 133, 137 (Tex. App.—Eastland 2006, no pet.).   
B.  Graham’s Overview of the Case

Graham’s general allegation in this case is that “[t]he issue is not whether the autopsy was performed according to acceptable standard, but that it was not authorized and was performed without proper consent.”  
She further asserts that “[a] lay jury is capable of deciding whether such consent was given.”  Hence, she deducts that this is not a health care liability claim and therefore no expert report was necessary. 

We reject Graham’s argument that simply because this is a “consent” case, it cannot be a health care liability claim.  Graham attempts to differentiate this case from qualifying as a health care liability claim by focusing her argument upon the lack of proper consent.  However, existing case law demonstrates that lack of consent will not prevent a case from qualifying as a health care liability claim.  For instance, in 
Williams v. Walker
, the appellant/patient argued that Dr. Walker had performed surgery on her without permission, resulting in an assault and battery claim, in that he surgically drained an abscess after she specifically told him she did not want to be “cut” and was interested in receiving antibiotic treatment only.
  
995 S.W.2d 740, 741 (Tex. App.—Eastland 1999, no pet.).  The court found that Williams’s factual allegations, including lack of consent, were all related to medical treatment provided by Dr. Walker, so it concluded that the allegations were an inseparable part of medical services and therefore constituted a health care liability claim requiring an expert report. 
 Id
. at 742.  This is, of course, consistent with current Texas law.  If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim. 
 Id. 
 Like our sister court’s analogous holding in 
Williams
, we hold that obtaining consent to perform an autopsy is an inseparable part of the overall act of performing an autopsy.  As such, lack of consent alone will not preclude the claim from qualifying as a health care liability claim.  However, for reasons further discussed below, we do not hold that this particular case qualifies as a health care liability claim.

C.  Texas Civil Practice and Remedies Code Section 74.001 Definitions

We now turn to the gravamen of this suit: whether the alleged failure to obtain consent for an autopsy constitutes a “health care liability claim” as defined by statute and interpreted by case law?

(13) “Health care liability claim” means a cause of action against a health care provider or a physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or 
health care
, or safety or professional or administrative services directly related to 
health care
, which proximately results in injury to or death of a claimant, whether the claimant’s claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann.
 § 74.001(a)(13) (Vernon 2005) (emphasis supplied).

(10) “Health Care” means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s 
medical care
, treatment, or confinement.

Id
. § 74.001(a)(10) (emphasis supplied).

(19) “Medical care” means any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient’s care, treatment, or confinement.

Id
. § 74.001(a)(19).

Because a “health care liability claim” is dependent on the definition of “health care,” and, in turn, on the definition of “medical care,” we next examine those definitions.  The “health care” definition ends with the phrase “the patient’s medical care, treatment, or confinement,” and the “medical care” definition ends with the phrase “the patient’s care, treatment, or confinement.”  “Patient” is defined in the Consent to Medical Treatment Act, Chapter 313 of the Texas Health and Safety Code, as “a person who is admitted to a hospital or residing in a nursing home.”  
Tex. Health & Safety Code Ann.
 § 313.002(8) (Vernon 2005). This clearly implies that a person must be alive in order to be a “patient.”  This court has previously held that a body was not a patient, nor was an autopsy a form of medical treatment.  
See Putthoff v. Ancrum
, 934 S.W.2d 164, 171 (Tex. App.—Fort Worth 1996, writ denied).  We agree with such a holding, as the idea that a cadaver can be a “patient” is, on its face, illogical.  As such, we hold that a dead body is not a patient and conclude that a body does not receive “medical care, treatment, or confinement” after death.  Therefore, we hold that the claim brought by Graham is not a health care liability claim.  As such, no expert opinion was required to be filed, and thus the trial court did not err by denying Dr. Hare’s motion to dismiss with prejudice.  We overrule Dr. Hare’s two issues. 

IV.  Conclusion

Having overruled Dr. Hare’s two issues, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: HOLMAN, GARDNER, and MCCOY, JJ.

DELIVERED: October 18, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.