COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-118-CV

 

 

RICHARD J. HARE, M.D.                                                       APPELLANT

 

                                                   V.

 

BETTY REED GRAHAM,
INDIVIDUALLY                                     APPELLEE

AND AS SURVIVING SPOUSE AND 

REPRESENTATIVE OF THE ESTATE OF 

LEE GRAHAM

 

                                              ------------

 

           FROM THE 236TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








In two issues, Appellant Richard J. Hare, M.D.
asserts that the trial court erred by denying his motion to dismiss with
prejudice a lawsuit filed by Betty Reed Graham (AGraham@), Individually
and as Surviving Spouse and Representative of the Estate of Lee Graham.  We affirm.

II. 
Factual and Procedural Background

A. Alleged Negligence/Intentional Infliction of Emotional
Distress/Interference

 

Graham alleged in her APlaintiff=s
Original Petition for Damages@ that
Lee Graham died on July 14, 2004, at Plaza Medical Center of Fort Worth and
that A[o]n or
about July 15, 2004, Defendant Richard J. Hare, M.D. [a licensed pathologist],
performed an unauthorized autopsy on the body of Decedent without Plaintiff=s
voluntary permission.@ 
Graham also alleged that employees of Plaza Medical Center misled and
intentionally deceived her regarding consent for an autopsy to be performed on
Lee Graham.  As articulated by Graham, 

Plaintiff alleges that
Defendant violated her right to have her husband=s body preserved and
buried in the condition in which he died, without her having thoughts of him
being cut unnecessarily prior to his burial. . . . It is well and long
established in Texas that the right to bury a corpse and preserve its remains
is a legal right which is recognized, and it is held that the courts will
protect such right and the right to dispose of a corpse by a decent burial
which includes the right to possession of the body in the same condition in
which death leaves it.  This right
belongs to the widow.  It is also held
that a widow has the primary and paramount right to the possession of her
husband=s body above that of any
other person.  Any interference with such
right of possession of the body of a deceased by mutilation or otherwise
disturbing the body without, the consent of the next of kin is an actionable
wrong for which a claim for damages may be maintained. [Citations omitted.]

 








Betty Graham sought to recover damages for
intentional infliction of emotional distress, negligent mishandling of a
corpse, and interference with the right of possession of the body of the
deceased.  Dr. Hare
asserted that the suit was a health care liability claim and filed his motion
to dismiss with prejudice based upon Graham=s
undisputed failure to serve an expert report and curriculum vitae as required
by section 74.351 of the Texas Civil Practice and Remedies Code.  In response, Graham asserted that the Aclaims
in this matter are for ordinary negligence and not malpractice, therefore, no
expert report is required [under] Chapter 74 of the Texas Civil Practice &
Remedies Code, [and that the claims] lie outside of the medical liability
statute because they are not health care liability claims.@

B.  Alleged
Breach of Contract and Fraud








Further, Graham argued that she had entered into
a Acontract@ with
Plaza Medical Center when Graham Arequested
to have her deceased husband=s
remains removed from the [hospital] premises,@ that APlaza
Medical Center [breached the contract] by releasing the body of Plaintiff=s
husband to the funeral home,@ and
that certain acts and representations by Plaza amounted to fraud.  Additionally, Graham=s
response to Hare=s motion to dismiss stated that
she had alleged Afraud@ against
Dr. Hare.  Dr. Hare responded that Graham
did not plead breach of contract or fraud against him but only against the
hospital.  Graham replied that A[t]he
petition against both parties were for the actions of [Dr. Hare], therefore all
defendants, including [Dr. Hare], are liable for all causes of action pled by
[Graham] as joint tortfeasors,@ citing Barnes
v. Moro, 76 S.W.2d 831, 832 (Tex. Civ. App.CWaco
1934, no writ).

The Barnes case is a plea of privilege
case in which the court observed that an employer may be held jointly liable
with his employee for the acts of his employee when the employee is acting
within the scope of his employment.  Id.  Such is not the case before us.  An examination of Graham=s
petition plainly pleads three causes of action under the heading ADefendant
Richard J. Hare, M.D.=s Liability,@ none of
which involve fraud or breach of contract. 
The petition does plead fraud under the heading ADefendant
Plaza Medical Center=s Liability,@ and it
alleges that the hospital is vicariously liable for the causes of actions
alleged against Dr. Hare while he acted in the scope and course of his
employment in a master/servant relationship, thereby imputing liability to the
hospital for Dr. Hare=s conduct.  It is not alleged that Dr. Hare is
responsible for the hospital=s
conduct.  Therefore, we agree with Dr.
Hare that Graham did not allege claims of fraud or breach of contract against
Dr. Hare in her live pleading before the trial court.  

 

 








C.  Orders
of the Court

On December 11, 2006, the trial court signed an
order of dismissal.  The trial court
granted Dr. Hare=s motion to dismiss with
prejudice and dismissed with prejudice Graham=s claim
against Dr. Hare. 

Then, on December 21, 2006, the trial court
signed an order vacating the order of dismissal, and on March 20, 2007, the
trial court signed an order denying Dr. Hare and Plaza=s
motions to dismiss.  This appeal
followed.

III. 
Issues

The two issues brought in this appeal by Dr. Hare
are (1) whether this is a health care liability claim arising from the
rendition of medical care and subject to the expert report requirement of
section 74.351(a) of the Texas Civil Practice and Remedies Code and (2) whether
the trial court erred by denying Dr. Hare=s motion
to dismiss with prejudice.  

A. 
Standard of Review








Ordinarily, a trial court=s denial
of a motion to dismiss filed under section 74.351 of the Texas Civil Practice
and Remedies Code is reviewed under an abuse of discretion standard, Kendrick
v. Garcia, 171 S.W.3d 698, 702-03 (Tex. App.CEastland
2005, pet. denied), unless, as in the case here, the applicability of Chapter
74 to Graham=s claims requires
interpretation.  In that case, we apply a
de novo standard of review to the question of law.  Oak Park, Inc. v. Harrison, 206 S.W.3d
133, 137 (Tex. App.CEastland 2006, no pet.).          B.  Graham=s
Overview of the Case

Graham=s
general allegation in this case is that A[t]he
issue is not whether the autopsy was performed according to acceptable
standard, but that it was not authorized and was performed without proper
consent.@  She further asserts that A[a] lay
jury is capable of deciding whether such consent was given.@  Hence, she deducts that this is not a health
care liability claim and therefore no expert report was necessary. 








We reject Graham=s
argument that simply because this is a Aconsent@ case,
it cannot be a health care liability claim. 
Graham attempts to differentiate this case from qualifying as a health
care liability claim by focusing her argument upon the lack of proper
consent.  However, existing case law
demonstrates that lack of consent will not prevent a case from qualifying as a
health care liability claim.  For
instance, in Williams v. Walker, the appellant/patient argued that Dr.
Walker had performed surgery on her without permission, resulting in an assault
and battery claim, in that he surgically drained an abscess after she
specifically told him she did not want to be Acut@ and was
interested in receiving antibiotic treatment only.  995 S.W.2d 740, 741 (Tex. App.CEastland
1999, no pet.).  The court found that
Williams=s
factual allegations, including lack of consent, were all related to medical
treatment provided by Dr. Walker, so it concluded that the allegations were an
inseparable part of medical services and therefore constituted a health care
liability claim requiring an expert report.  Id. at 742.  This is, of course, consistent with current
Texas law.  If the act or omission
alleged in the complaint is an inseparable part of the rendition of health care
services, then the claim is a health care liability claim.  Id.  Like our sister court=s
analogous holding in Williams, we hold that obtaining consent to perform
an autopsy is an inseparable part of the overall act of performing an
autopsy.  As such, lack of consent alone
will not preclude the claim from qualifying as a health care liability
claim.  However, for reasons further
discussed below, we do not hold that this particular case qualifies as a health
care liability claim.

C.  Texas
Civil Practice and Remedies Code Section 74.001 Definitions

We now turn to the gravamen of this suit: whether
the alleged failure to obtain consent for an autopsy constitutes a Ahealth
care liability claim@ as defined by statute and
interpreted by case law?

(13) AHealth care liability
claim@ means a cause of action
against a health care provider or a physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related
to health care, which proximately results in injury to or death of a
claimant, whether the claimant=s claim or cause of action sounds in tort or
contract.

 








Tex. Civ. Prac. & Rem. Code Ann. '
74.001(a)(13) (Vernon 2005) (emphasis supplied).

(10) AHealth Care@ means any act or
treatment performed or furnished, or that should have been performed or
furnished, by any health care provider for, to, or on behalf of a patient during
the patient=s medical care,
treatment, or confinement.

 

Id. '
74.001(a)(10) (emphasis supplied).

(19) AMedical care@ means any act defined as
practicing medicine under Section 151.002, Occupations Code, performed or
furnished, or which should have been performed, by one licensed to practice
medicine in this state for, to, or on behalf of a patient during the patient=s care, treatment, or
confinement.

 

Id. '
74.001(a)(19).








Because a Ahealth
care liability claim@ is dependent on the definition
of Ahealth
care,@ and, in
turn, on the definition of Amedical
care,@ we next
examine those definitions.  The Ahealth
care@
definition ends with the phrase Athe
patient=s
medical care, treatment, or confinement,@ and the
Amedical
care@
definition ends with the phrase Athe
patient=s care,
treatment, or confinement.@  APatient@ is
defined in the Consent to Medical Treatment Act, Chapter 313 of the Texas
Health and Safety Code, as Aa person
who is admitted to a hospital or residing in a nursing home.@  Tex.
Health & Safety Code Ann. '
313.002(8) (Vernon 2005). This clearly implies that a person must be alive in
order to be a Apatient.@  This court has previously held that a body
was not a patient, nor was an autopsy a form of medical treatment.  See Putthoff v. Ancrum, 934 S.W.2d
164, 171 (Tex. App.CFort Worth 1996, writ
denied).  We agree with such a holding,
as the idea that a cadaver can be a Apatient@ is, on
its face, illogical.  As such, we hold
that a dead body is not a patient and conclude that a body does not receive Amedical
care, treatment, or confinement@ after
death.  Therefore, we hold that the claim
brought by Graham is not a health care liability claim.  As such, no expert opinion was required to be
filed, and thus the trial court did not err by denying Dr. Hare=s motion
to dismiss with prejudice.  We overrule
Dr. Hare=s two
issues. 

IV. 
Conclusion

Having overruled Dr. Hare=s two
issues, we affirm the trial court=s
judgment.

 

 

 

BOB
MCCOY

JUSTICE

 

PANEL A:   HOLMAN,
GARDNER, and MCCOY, JJ.

 

DELIVERED: October 18,
2007











[1]See Tex. R. App. P. 47.4.