

NUMBER 13-08-00461-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **EDUCARE COMMUNITY LIVING–TEXAS LIVING CENTER, INC. AND RES-CARE, INC.,** | **Appellants,** |

**v.**

| | |
|---|---|
| **SYLVIA CELEDON AND RODOLFO CELEDON, INDIVIDUALLY AND AS NEXT FRIENDS OF NORMA LINDA CELEDON, AN INCAPACITATED PERSON,** | **Appellees.** |

### On appeal from the 389th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Rodriguez**

This appeal involves the alleged sexual assault of a mentally disabled person at an

adult daycare program run by appellants EduCare Community Living–Texas Living

Centers, Inc. and Res-Care, Inc. Appellants challenge the trial court's denial of their motion to dismiss the lawsuit filed by appellees, Sylvia and Rodolfo Celedon, individually and as next friends of Norma Linda Celedon, for failure to serve an expert report, as required in health care liability claims. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a)-(b) (Vernon Supp. 2008). By one issue, appellants argue that the trial court erred in failing to dismiss the case because appellees' claims, as a matter of law, are health care liability claims under chapter 74 of the civil practice and remedies code. *See id.* § 74.001(a)(13) (Vernon 2005). We reverse and remand.

## I. BACKGROUND

Norma Linda, the Celedon's mentally retarded daughter, attended an adult daycare program operated by EduCare in Edinburg, Texas. Appellees allege that, while she was at EduCare's facility, Norma Linda was sexually assaulted by a mentally disabled male who was also enrolled in EduCare's program. Appellees allege that the assault occurred in a garden shed behind the facility that had been left unlocked by EduCare personnel.

Appellees sued EduCare and its parent company, Res-Care, Inc., for failing to maintain a safe facility, alleging causes of action against appellants for premises liability, common law fraud, breach of contract, breach of warranty, negligent misrepresentation, and deceptive trade practices. Appellants moved to dismiss the lawsuit based on appellees' failure to serve an expert report within 120 days of the filing of their petition as is required in all health care liability claims.[1] *See id.* § 74.351(a)-(b). After a hearing, the

---

[1] It is undisputed that appellees never served an expert report in this case.

trial court denied appellants' motion to dismiss. This accelerated, interlocutory appeal ensued. *See id.* § 51.014(a)(9) (Vernon 2008).

## II. STANDARD OF REVIEW

"[W]hether a claim is a health care liability claim pursuant to section 74.351 is a question of law and is reviewed de novo." *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 773 (Tex. App.–Corpus Christi 2006, pet. denied). A health care liability claim is defined as:

> [A] cause of action against a health care provider . . . for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(13). Relevant to this case, standards of safety implicate claimants' "exposure to unreasonably dangerous or defective conditions or things" in the course of their care. *Marks v. St. Luke's Episcopal Hosp.*, No. 07-0783, 2009 WL 2667801, at *8 (Tex. Aug. 28, 2009).

In determining whether appellees' claims are indeed health care liability claims, we focus on the "gravamen," or underlying nature, of the claim. *Id.*; *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005). "[W]e are not bound by the form of the pleading," and the nature of the claim is not determined simply by the status of the defendant or the place of injury. *Diversicare*, 185 S.W.3d at 847; *see Marks*, 2009 WL 2667801, at *8. Instead, "it is the cause of the injury and its relationship to medical or professional judgment that determines" the nature of the claim and the applicability of the health care liability statute. *Marks*, 2009 WL 2667801, at *8. "[I]f the act or omission that

3

gave rise to the claim is so integral" to the care provided by the facility as "to be an inseparable part" of that care, the claim is one for health care liability. *Diversicare*, 185 S.W.3d at 848. The necessity of expert testimony is an important factor in determining whether the plaintiff's claim is inseparable from the rendition of health care. *Id.*

### III. DISCUSSION

#### A. Health Care Provider

At the outset, we address appellees' challenge to the status of appellants as health care providers under the statute. Health care providers include, among others, health care institutions. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(12)(A)(vii). One type of health care institution covered by chapter 74 is "an intermediate care facility for the mentally retarded or a home and community-based services waiver program for persons with mental retardation . . . ." *Id.* § 74.001(11)(I). Our review of the record reveals that EduCare is indeed this type of institution, and because appellees filed suit against appellants, a health care institution as defined by the statute, the "first element" of a health care liability claim has been met. *See Valley Baptist Med. Ctr. v. Azua*, 198 S.W.3d 810, 814 (Tex. App.–Corpus Christi 2006, no pet.).

#### B. Health Care Liability Claim

By their sole issue on appeal, appellants argue that the trial court erred in ruling that appellees' causes of action are not health care liability claims. Specifically, appellants contend that appellees' claims center on whether appellants properly cared for Norma Linda within the accepted standards of safety for a program that provides services to mentally disabled adults. We agree.

4

The Texas Supreme Court and courts of appeal have held that lawsuits based on assaults of patients challenging the standards of safety and protection of patients in nursing homes and other adult care facilities are health care liability claims covered by the expert report requirements of section 74.351. *See Diversicare*, 185 S.W.3d at 851, 853; *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 34-36 (Tex. App.–El Paso 2006, no pet.); *Emeritus Corp. v. Highsmith*, 211 S.W.3d 321, 327-28 (Tex. App.–San Antonio 2006, pet. denied); *Oak Park, Inc. v. Harrison*, 206 S.W.3d 133, 140-41 (Tex. App.–Eastland 2006, no pet.). In nursing homes and other facilities that care for patients who need extensive assistance with nearly every aspect of their lives, the supervision of patients is considered by Texas courts to be an inseparable part of the services provided by these facilities. *See Diversicare*, 185 S.W.3d at 851; *Harrison*, 206 S.W.3d at 141. It is for this reason that a failure to supervise or train staff or a failure to supervise and assist patients is a departure from standards of safety that implicates chapter 74. *See Marks*, 2009 WL 2667801, at *8; *Highsmith*, 211 S.W.3d at 328. The decisions made about the safety conditions at these facilities involve professional judgment, and when a patient is injured because of a lapse in this decision-making, a lawsuit pertaining to that injury is a health care liability claim. *See Diversicare*, 185 S.W.3d at 851.

Appellees argue that this case does not fall in the same category as the above-mentioned cases because the real issue here was appellants' failure to lock the garden shed in which Norma Linda was allegedly assaulted. Appellees argue that no expert testimony is needed to establish appellants' breach because it is within the common knowledge of any juror that a mentally disabled male with a history of sexual violence

5

should be closely monitored and not given the opportunity to assault another patient. *See Stradley*, 210 S.W.3d at 775 (reasoning that the necessity of expert testimony is an important factor in determining whether a lawsuit is a health care liability claim). In sum, appellees urge us to construe this case as a pure premises liability cause of action involving an ordinary breach of the standard of care owed by any property owner.

Appellees' creative pleading, however, does not allow this Court to circumvent the requirements of section 74.351 when the essence of appellees' case is a health care liability claim. *See id.* ("Artful pleading cannot avoid the requirements of section 74.351 . . . ."). The nature of appellees' lawsuit is a challenge to the standards of safety at appellants' facility. Viewed in that light, it matters little whether the garden shed in which Normal Linda was allegedly assaulted was or was not locked. It was not the unlocked garden shed that caused the injury to Norma Linda—it was appellants' alleged failure to supervise and control its other patients. In other words, the gravamen of appellees' claims is that appellants failed to protect Norma Linda from dangerous conditions while she was under their care. *See Marks*, 2009 WL 2667801, at *8. Thus, appellees' claims constituted health care liability claims subject to the expert report requirements of section 74.351, and because appellees failed to filed an expert report in this case, we conclude that the trial court erred in denying appellants' motion to dismiss. Appellants' first issue is sustained.

Having held that appellees' claims are health care liability claims and that the trial court erred in denying appellants' motion to dismiss, we also conclude that appellees' suit should be dismissed with prejudice and that appellants are entitled to reasonable attorney's fees and costs of court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

6

## IV.  CONCLUSION

We reverse the trial court's denial of appellants' motion to dismiss and remand for proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 8th day of October, 2009.

7