NUMBER 13-08-00461-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


EDUCARE COMMUNITY LIVING-TEXAS LIVING 

CENTER, INC. AND RES-CARE, INC., Appellants,


v.
 


SYLVIA CELEDON AND RODOLFO CELEDON,

INDIVIDUALLY AND AS NEXT FRIENDS OF NORMA

LINDA CELEDON, AN INCAPACITATED PERSON, Appellees.

 


On appeal from the 389th District Court 


of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela 


Memorandum Opinion by Justice Rodriguez



 This appeal involves the alleged sexual assault of a mentally disabled person at an
adult daycare program run by appellants EduCare Community Living-Texas Living
Centers, Inc. and Res-Care, Inc. Appellants challenge the trial court's denial of their
motion to dismiss the lawsuit filed by appellees, Sylvia and Rodolfo Celedon, individually
and as next friends of Norma Linda Celedon, for failure to serve an expert report, as
required in health care liability claims. See Tex. Civ. Prac. & Rem. Code § 74.351(a)-(b)
(Vernon Supp. 2008). By one issue, appellants argue that the trial court erred in failing to
dismiss the case because appellees' claims, as a matter of law, are health care liability
claims under chapter 74 of the civil practice and remedies code. See id. § 74.001(a)(13)
(Vernon 2005). We reverse and remand.

I. BACKGROUND

 Norma Linda, the Celedon's mentally retarded daughter, attended an adult daycare
program operated by EduCare in Edinburg, Texas. Appellees allege that, while she was
at EduCare's facility, Norma Linda was sexually assaulted by a mentally disabled male who
was also enrolled in EduCare's program. Appellees allege that the assault occurred in a
garden shed behind the facility that had been left unlocked by EduCare personnel. 

 Appellees sued EduCare and its parent company, Res-Care, Inc., for failing to
maintain a safe facility, alleging causes of action against appellants for premises liability,
common law fraud, breach of contract, breach of warranty, negligent misrepresentation,
and deceptive trade practices. Appellants moved to dismiss the lawsuit based on
appellees' failure to serve an expert report within 120 days of the filing of their petition as
is required in all health care liability claims. (1) See id. § 74.351(a)-(b). After a hearing, the
trial court denied appellants' motion to dismiss. This accelerated, interlocutory appeal
ensued. See id. § 51.014(a)(9) (Vernon 2008). 

II. STANDARD OF REVIEW

 "[W]hether a claim is a health care liability claim pursuant to section 74.351 is a
question of law and is reviewed de novo." Valley Baptist Med. Ctr. v. Stradley, 210 S.W.3d
770, 773 (Tex. App.-Corpus Christi 2006, pet. denied). A health care liability claim is
defined as: 

 [A] cause of action against a health care provider . . . for treatment, lack of
treatment, or other claimed departure from accepted standards of medical
care, or health care, or safety or professional or administrative services
directly related to health care, which proximately results in injury to or death
of a claimant, whether the claimant's claim or cause of action sounds in tort
or contract.


Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13). Relevant to this case, standards of safety
implicate claimants' "exposure to unreasonably dangerous or defective conditions or
things" in the course of their care. Marks v. St. Luke's Episcopal Hosp., No. 07-0783, 2009
WL 2667801, at *8 (Tex. Aug. 28, 2009).

 In determining whether appellees' claims are indeed health care liability claims, we
focus on the "gravamen," or underlying nature, of the claim. Id.; Diversicare Gen. Partner,
Inc. v. Rubio, 185 S.W.3d 842, 847 (Tex. 2005). "[W]e are not bound by the form of the
pleading," and the nature of the claim is not determined simply by the status of the
defendant or the place of injury. Diversicare, 185 S.W.3d at 847; see Marks, 2009 WL
2667801, at *8. Instead, "it is the cause of the injury and its relationship to medical or
professional judgment that determines" the nature of the claim and the applicability of the
health care liability statute. Marks, 2009 WL 2667801, at *8. "[I]f the act or omission that
gave rise to the claim is so integral" to the care provided by the facility as "to be an
inseparable part" of that care, the claim is one for health care liability. Diversicare, 185
S.W.3d at 848. The necessity of expert testimony is an important factor in determining
whether the plaintiff's claim is inseparable from the rendition of health care. Id. 

III. DISCUSSIONA. Health Care Provider

 At the outset, we address appellees' challenge to the status of appellants as health
care providers under the statute. Health care providers include, among others, health care
institutions. Tex. Civ. Prac. & Rem. Code Ann. § 74.001(12)(A)(vii). One type of health
care institution covered by chapter 74 is "an intermediate care facility for the mentally
retarded or a home and community-based services waiver program for persons with mental
retardation . . . ." Id. § 74.001(11)(I). Our review of the record reveals that EduCare is
indeed this type of institution, and because appellees filed suit against appellants, a health
care institution as defined by the statute, the "first element" of a health care liability claim
has been met. See Valley Baptist Med. Ctr. v. Azua, 198 S.W.3d 810, 814 (Tex.
App.-Corpus Christi 2006, no pet.). 

B. Health Care Liability Claim 

 By their sole issue on appeal, appellants argue that the trial court erred in ruling that
appellees' causes of action are not health care liability claims. Specifically, appellants
contend that appellees' claims center on whether appellants properly cared for Norma
Linda within the accepted standards of safety for a program that provides services to
mentally disabled adults. We agree. 

 The Texas Supreme Court and courts of appeal have held that lawsuits based on
assaults of patients challenging the standards of safety and protection of patients in
nursing homes and other adult care facilities are health care liability claims covered by the
expert report requirements of section 74.351. See Diversicare, 185 S.W.3d at 851, 853;
NCED Mental Health, Inc. v. Kidd, 214 S.W.3d 28, 34-36 (Tex. App.-El Paso 2006, no
pet.); Emeritus Corp. v. Highsmith, 211 S.W.3d 321, 327-28 (Tex. App.-San Antonio 2006,
pet. denied); Oak Park, Inc. v. Harrison, 206 S.W.3d 133, 140-41 (Tex. App.-Eastland
2006, no pet.). In nursing homes and other facilities that care for patients who need
extensive assistance with nearly every aspect of their lives, the supervision of patients is
considered by Texas courts to be an inseparable part of the services provided by these
facilities. See Diversicare, 185 S.W.3d at 851; Harrison, 206 S.W.3d at 141. It is for this
reason that a failure to supervise or train staff or a failure to supervise and assist patients
is a departure from standards of safety that implicates chapter 74. See Marks, 2009 WL
2667801, at *8; Highsmith, 211 S.W.3d at 328. The decisions made about the safety
conditions at these facilities involve professional judgment, and when a patient is injured
because of a lapse in this decision-making, a lawsuit pertaining to that injury is a health
care liability claim. See Diversicare, 185 S.W.3d at 851.

 Appellees argue that this case does not fall in the same category as the above-mentioned cases because the real issue here was appellants' failure to lock the garden
shed in which Norma Linda was allegedly assaulted. Appellees argue that no expert
testimony is needed to establish appellants' breach because it is within the common
knowledge of any juror that a mentally disabled male with a history of sexual violence
should be closely monitored and not given the opportunity to assault another patient. See
Stradley, 210 S.W.3d at 775 (reasoning that the necessity of expert testimony is an
important factor in determining whether a lawsuit is a health care liability claim). In sum,
appellees urge us to construe this case as a pure premises liability cause of action
involving an ordinary breach of the standard of care owed by any property owner. 

 Appellees' creative pleading, however, does not allow this Court to circumvent the
requirements of section 74.351 when the essence of appellees' case is a health care
liability claim. See id. ("Artful pleading cannot avoid the requirements of section 74.351 .
. . ."). The nature of appellees' lawsuit is a challenge to the standards of safety at
appellants' facility. Viewed in that light, it matters little whether the garden shed in which
Normal Linda was allegedly assaulted was or was not locked. It was not the unlocked
garden shed that caused the injury to Norma Linda--it was appellants' alleged failure to
supervise and control its other patients. In other words, the gravamen of appellees' claims
is that appellants failed to protect Norma Linda from dangerous conditions while she was
under their care. See Marks, 2009 WL 2667801, at *8. Thus, appellees' claims constituted
health care liability claims subject to the expert report requirements of section 74.351, and
because appellees failed to filed an expert report in this case, we conclude that the trial
court erred in denying appellants' motion to dismiss. Appellants' first issue is sustained.

 Having held that appellees' claims are health care liability claims and that the trial
court erred in denying appellants' motion to dismiss, we also conclude that appellees' suit
should be dismissed with prejudice and that appellants are entitled to reasonable attorney's
fees and costs of court. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).IV. CONCLUSION

 We reverse the trial court's denial of appellants' motion to dismiss and remand for
proceedings consistent with this opinion.


 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and

filed this 8th day of October, 2009.


1. It is undisputed that appellees never served an expert report in this case.